Robert J. LYETH, Plaintiff,

v.

CHRYSLER CORPORATION,
Defendant,

and

Robert Abrams, Attorney General of
the State of New York, Intervenor.

Civ. No. 88–441L.

United States District Court,
W.D. New York.

April 4, 1990.

Mark Costello, Boylan, Brown, Code, Fowler, Randall & Wilson, Rochester, N.Y., for plaintiff.

Thomas Wiswall, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., for defendant.

Vincent Barone, Asst. Atty. Gen., Rochester, N.Y., for intervenor.

## DECISION AND ORDER

LARIMER, District Judge.

In 1984, Robert J. Lyeth ("plaintiff") purchased a new Jeep Cherokee motor vehicle. Very soon after the purchase, he had severe problems with the vehicle and he has attempted ever since to have the vehicle fixed or replaced. Today, almost six years after the purchase he continues to spar with Chrysler Corporation over the vehicle. Perhaps this decision will bring this saga closer to a conclusion.

Lyeth has moved for summary judgment in this action to confirm a 1987 award to him of a new vehicle under New York General Business Law § 198–a(k), the compulsory arbitration provision of the state's so-called "New Car Lemon Law." Plaintiff has also moved for costs and attorneys fees pursuant to General Business Law §§ 198–a(c), (h) and (*l*). For the following reasons, plaintiff's motions for summary judgment and for costs and attorneys fees are granted.

### I. BACKGROUND.

#### A. Complaints About The Jeep.

On October 10, 1984, plaintiff, a resident of Lima, New York, bought a new 1985 Jeep Cherokee from a dealer in Geneva, New York. The vehicle was manufactured by Jeep Corporation, which was a subsidiary of American Motors Corporation ("AMC") at the time. Chrysler Corporation ("defendant"), a Delaware corporation with its principal place of business in Michigan, acquired AMC in August 1987.

According to plaintiff, after having driven the jeep between 1,000 and 1,500 miles, the vehicle began periodically to experience severe front-end vibrations. These vibrations tended to occur in warm weather at speeds over 45 m.p.h., and were worst in the summer months. According to plaintiff, the shaking would sometimes reach the point where driving became impossible and full stopping was required to correct it.

In August 1985, after complaining to AMC and to the dealer, plaintiff took the car back to the dealer. There, according to Chrysler Arbitration Coordinator Gregory Schoonover, it remained for two weeks before service personnel concluded that they could not duplicate the problem. The Jeep remained at the dealer for another three weeks before plaintiff, apparently at the dealer's behest, retrieved the vehicle. All in all, during his first two years of ownership, plaintiff returned the vehicle to the dealer for repairs at least four times.

### B. Nonbinding Arbitration.

In October 1985 plaintiff sought relief from AMC under its own informal dispute-settlement plan that conforms to the requirements of General Business Law § 198–a(g) and (m). At this point, the Jeep had 12,600 miles on it.

Arbitration was conducted by two arbitrators from the Better Business Bureau who rendered their decision on March 14, 1986. Although they too could not duplicate the shaking, they concluded that plaintiff's Jeep "may have the problems described," and referred the Jeep to an independent service center in Rochester for a more detailed inspection and repair at AMC's expense.

Plaintiff, although initially willing to accept the arbitrators' decision, agreed to be bound by it only if the independent evaluation and repair could be postponed several months until summer. This was because he felt that only under warm conditions would the shaking be likely to occur. Neither AMC nor the arbitrators would consent to such a postponement. Plaintiff consequently refused to accept the decision of the arbitrators.

### C. Lemon Law Arbitration.

In late 1987 plaintiff timely filed a claim with the New York State Attorney General's Office seeking mandatory arbitration with defendant under General Business Law § 198–a(k). The statute had been amended to add the provision concerning compulsory arbitration, § 198–a(k), effective January 1, 1987.

On October 29, 1987, an arbitrator from the American Arbitration Association ("AAA") conducted a hearing on plaintiff's complaint.

The arbitrator rendered his decision on November 2, 1987. In pertinent part the decision reads as follows:

I find that the consumer qualifies for relief under [General Business Law § 198–a] and award relief to the consumer. The consumer has elected to receive a comparable replacement vehicle as follows: NEW MODEL JEEP CHEROKEE INCLUDING ALL OPTIONS WITHIN HIS 1985 JEEP CHEROKEE. The consumer is entitled to reimbursement from the manufacturer of the $200 filing fee. The manufacturer is hereby directed to comply with this decision within 30 days. . . . [F]ailure of the manufacturer to comply . . . shall entitle the consumer to recover a fee of $25 for each business day of noncompliance, up to $500. This decision is binding on both parties. A dissatisfied party may seek judicial relief pursuant to CPLR [New York Civil Practice Law and Rules Article] 75.

By letter dated November 9, 1987, Schoonover, on behalf of Chrysler, objected to the arbitrator's decision. Schoonover disputed the facts developed at the arbitration hearing, and he also maintained that the arbitrator had made a legal error in his calculation of the award because he had failed to deduct an amount representing use of the vehicle, which he claimed was 47,743 miles at the time of arbitration. Schoonover maintained that this entitled defendant to reduce plaintiff's award by $4,761.68 or, in effect, to receive this amount before giving plaintiff a new Jeep.

The arbitrator rejected Chrysler's objections and confirmed his award to plaintiff of a new, comparably equipped Jeep.

Although the statute required Chrysler to comply with the award within thirty days, § 198–a(h), it neglected or refused to do so. After about five months plaintiff retained counsel and commenced a proceeding in New York State Supreme Court to confirm the award. Plaintiff sought a new Jeep, reimbursement of the $200 filing fee under § 198–a(c)(1), the $500.00 penalty for defendant's failure to comply with the arbitration award under § 198–a(h); and attorneys' fees under § 198–a(*l*). Defendant subsequently removed the action on diversity grounds to this Court in early 1989.

By order dated May 4, 1989, I granted the motion of Robert Abrams, New York State Attorney General, to intervene relative to Chrysler's constitutional challenges to § 198–a(k).

## II. DISCUSSION.

### A. Arbitration Under The Lemon Law.

In 1983, New York enacted General Business Law § 198–a, which quickly became known as the "New Car Lemon Law." As noted by a recent decision of the New York Court of Appeals, the law was enacted in order "to provide New York consumers greater protection than that afforded by automobile manufacturers' express limited warranties or the federal Magnuson–Moss Warranty Act [15 U.S.C. § 2301 *et seq.*]." *Motor Vehicle Manufacturers Association of the United States v. State*, 75 N.Y.2d 175, 551 N.Y.S.2d 470, 472, 550 N.E.2d 919, 921 (1990) [hereinafter *Motor Vehicle Manufacturers*].

The statute provides that, when a manufacturer cannot correct a defect or condition that "substantially impairs" the value of a new motor vehicle after a "reasonable number of attempts," the manufacturer, at the option of the consumer, is required either to replace the vehicle with a comparable product or refund the purchase price. N.Y.Gen.Bus.Law § 198–a(c)(1) (McKinney 1989). The statute presumes that a "reasonable number of attempts" have been made to repair a vehicle if, within two years or 18,000 miles of purchase, the vehicle requires four trips to the repair shop or is out of service for thirty or more days. N.Y.Gen.Bus.Law § 198–a(d) (McKinney 1989). As originally enacted, the statute provided no dispute resolution mechanism for consumers. *See generally*, Givens, Practice Commentary, N.Y.Gen Bus.Law § 198–a (McKinney 1988). Consumers had no recourse but to seek enforcement of the Lemon Law in court or by means of nonbinding informal arbitration programs established by manufacturers themselves along guidelines provided by § 198–a(g). These procedures often proved costly for the average consumer and resulted in long delays, lengthy litigation and unfair awards. *Motor Vehicle Manufacturers, supra*, 551 N.Y.S.2d at 472, 550 N.E.2d at 921. *See, e.g., State v. Ford Motor Co.*, 74 N.Y.2d 495, 549 N.Y.S.2d 368, 548 N.E.2d 906 (1989). These informal in-house arbitration programs have themselves been the subject of much litigation—specifically, over the question of whether or not they are preempted by federal legislation. *See, e.g., General Motors Corp. v. Abrams*, 897 F.2d 34 (2d Cir.1990) [hereinafter *General Motors*]. *See also, The Great Legal Auto War Forges a United Front*, Nat'l L.J., Mar. 5, 1990, at 8, col. 1.

After several attempts to modify the Lemon Law so as to achieve its goal of swift and equitable resolution of consumer complaints, the New York Legislature enacted General Business Law § 198–a(k) in 1986, effective January 1, 1987. *See* Givens, *supra*.

Section 198–a(k) gives aggrieved consumers the option of submitting the dispute to arbitration.

§ 198–a(k) provides that:

Each consumer shall have the option of submitting any dispute arising under this section upon the payment of a prescribed filing fee to an alternate arbitration mechanism established pursuant to regulations promulgated hereunder by the New York State Attorney General. Upon application of the consumer and payment of the filing fee, all manufactur-

ers shall submit to such alternate arbitration.... [which] shall be conducted by a professional arbitrator or arbitration firm appointed by and under regulations established by the New York State Attorney General. Such a mechanism shall ensure the personal objectivity of its arbitrators and the right of each party to present its case, to be in attendance during any presentation made by the other party and to rebut or refuse such presentation. In all other respects, such alternate arbitration mechanism shall be governed by [Civil Practice Law & Rules (CPLR) Article 75].

These provisions, noted Governor Mario Cuomo upon signing them into law, "provided important new protections to consumers [necessary] to insure that the intent of the original Lemon Law is fulfilled." Governor's Approval Memorandum, 1986 *N.Y. S.Leg.Ann.* 334.

B. Chrysler's Challenge To The Lemon Law In General And Its Challenge To The Particular Award To Lyeth Are Without Merit.

Defendant defends its failure to comply with this particular arbitration award essentially on five grounds: (1) that the Lemon Law violates the New York State Constitution and State Administrative Procedure Act ("SAPA"); (2) that the compulsory arbitration provision of the Lemon Law is unconstitutional in that it deprives automakers of due process and equal protection under the Fourth and Fourteenth Amendments; (3) that regulations promulgated by the Attorney General to implement the Lemon Law are inconsistent with the statute's legislative goals; (4) that, having sought informal resolution of his claim in 1985, plaintiff was barred from utilizing compulsory arbitration under § 198–a(k); and (5) that the arbitrator exceeded his authority in making the award.

As the following analysis will illustrate, I am not persuaded by any of Chrysler's arguments and therefore plaintiff is entitled to summary judgment against Chrysler.

1. *General Business Law § 198–a(k) Does Not Violate the New York State Constitution or SAPA.*

A basic purpose of a district court, in the exercise of its diversity jurisdiction, is "the enforcement of state-created rights and state policies going to the heart of those rights." *Bernhardt v. Polygraphic Company of America, Inc.,* 350 U.S. 198, 208, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 [1938] ). "In adjudicating a state-created right in the exercise of its diversity jurisdiction [a district court is] 'for that purpose, in effect, only another court of the State.'" *Factors Etc., Inc. v. Pro Arts, Inc.,* 652 F.2d 278, 282 (2d Cir. 1981), *cert. denied* 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982) (quoting *Guaranty Trust Co. v. York,* 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 [1945] ). *See also DeWeerth v. Baldinger,* 836 F.2d 103, 108 (2d Cir.1987), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2823, 100 L.Ed.2d 924 (1988); *Stafford v. International Harvester,* 668 F.2d 142, 148 (2d Cir.1981).

Defendant here argues that § 198–a(k) contravenes the New York State constitution by (1) denying it trial by jury, (2) depriving it of access to the courts, and (3) unduly delegating judicial power to arbitrators. Defendant also claims that regulations devised to implement § 198–a(k) violate SAPA.

Each of these arguments was raised by automakers and rejected by the New York State Court of Appeals in its recent decision in *Motor Vehicle Manufacturers,* 551 N.Y.S.2d at 474–75, 475–476, 478, 550 N.E.2d at 923–924, 924–925, 927. In its papers filed in this case, before the Court of Appeals rendered its decision, Chrysler made precisely the same arguments that had been made before the Court of Appeals in *Motor Vehicle Manufacturers.* The New York Court of Appeals has now spoken on the state issues. Therefore, acting as "only another [state] court" for the purposes of this action, I accept the conclusions of New York's highest court in con-

struing § 198–a(k) as constitutional in each of the respects contested by defendant.

## 2. *General Business Law § 198–a(k) Does Not Deprive Defendant of Due Process or Equal Protection.*

Defendant argues that General Business Law § 198–a(k) denies automakers due process under the Fourth Amendment, as well as equal protection of the law as prescribed by the Fifth and Fourteenth Amendment. I find these contentions to be unpersuasive.

### (a) § 198–a(k) Does Not Deny Equal Protection.

■ Chrysler claims a denial of equal protection although the basis for the claimed denial is not altogether clear. To be sure, the law creates a specific avenue of relief solely for the benefit of consumers. The consumer initiates the action by paying a filing fee. The consumer, not the manufacturer, has the option of choosing an oral hearing or one based solely on documents.

But without minimizing these differences, it is clear that § 198–a(k) otherwise treats both parties to Lemon Law arbitration in a substantially equal manner. Each party gets to present its case, each has the right to be in attendance during the other side's presentation and each has the right to rebut or refute the evidence submitted by the other. Each may be represented by counsel. 13 N.Y.C.R.R. § 300.11. Both parties have the right to seek judicial review under CPLR Article 75. And—most importantly—the arbitrator's ruling equally binds both parties.

In my view, the primary material aspects of the Lemon Law's arbitration program treat both sides in a similar fashion. There is no equal protection violation.

Even if there are some differences in treatment, that fact by itself does not create a violation of equal protection. Assuming some differences, the threshold issue concerns the appropriate standard of review to be applied by a court when an equal protection challenge is mounted. *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980).

■ Chrysler does not claim that the law burdens "fundamental rights" or creates "suspect classifications." It seems clear that the Lemon Law constitutes a type of economic regulation. Therefore, the appropriate level of review must be the Supreme Court's "rational relationship" standard— that is, whether § 198–a(k) is rationally related to a legitimate objective of the State of New York. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 20–21, 93 S.Ct. 1278, 1289–1290, 36 L.Ed.2d 16 (1973); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). *See also Chrysler v. Texas Motor Vehicle Commission*, 755 F.2d 1192, 1201 (5th Cir.1985) (upholding the constitutionality of the Texas lemon law on rational relationship grounds).

The first issue relates to the legitimacy of the Lemon Law's goals. These goals are, in sum, to provide an easier means for individual consumers to pursue their grievances against automobile manufacturers concerning disputes where traditional litigation proved expensive and protracted to the detriment of most consumers.

Defendant does not dispute that, in general, regulation of automobiles is a proper state function. The state regulates many aspects of automobile ownership and use. No one now challenges the state's right to do so. A regulatory scheme concerning procedures for pursuing grievances by consumers against automakers is entirely consistent with the state's broad interest concerning the ownership and operation of motor vehicles.

The Fifth Circuit responded to a similar challenge by Chrysler in Texas as follows: "[a] legislature entitled to deference in its regulatory scheme sufficient to license sales of a product or set standards for its quality, [such as motor vehicles,] a fortiori can express its economic choices and attempt to achieve them with procedural tools" such as Lemon Law arbitration. *Texas Motor Vehicle Commission, supra,* 755 F.2d at 1201.

■ In short, it is a legitimate state purpose to create a procedural device to process consumer complaints relating to the

quality of automobiles sold and used in the state.

Another issue is whether Lemon Law arbitration, and the distinctions it draws between consumers on the one hand and automakers on the other, rationally relates to the Lemon Law's stated purpose. I find that it does. It is not seriously disputed that traditional means of redress available to disgruntled consumers, such as a lawsuit sounding in contract or warranty, was inadequate. In any event, the New York State legislature made a decision that the available remedies were not satisfactory and Chrysler cannot seriously contend that such a decision was unreasonable. Furthermore, there is no evidence to demonstrate that the Lemon Law program produces "patently arbitrary or irrational" results. *Fritz*, 449 U.S. at 177–78, 101 S.Ct. at 460–61.

A legislative program such as the Lemon Law is not invalid simply because it makes it easier for one group of people to gain redress at another's expense.

There are many factors that can be considered by a state legislature in determining how to correct a perceived problem. As the Fifth Circuit noted in *Texas Motor Vehicle Commission,*

> the legislature was here responding to more than the length of the respective parties' purses. It was also, as it was entitled to do, recognizing the distinct economic stakes of the parties. The legislature could permissibly assume that a car purchaser has little economic incentive to risk more than the value of his purchase to protect it. A manufacturer, on the other hand, has distinct economic concerns, including product image and reputation for toughness in its litigation posture, and accordingly its interests in warranty suits are plainly greater than its immediate exposure, or at least the legislature was entitled to conclude. Indeed, much of tort law rests on such economic adjustments and legislative assumptions about economic incentives and allocative efficiencies.

755 F.2d at 1203.

The Supreme Court has recognized that there are many legitimate factors that legislators may consider in determining state policy.

> The process of making the determination of rationality is, by its nature, highly empirical, and in matters not within specialized judicial competence or completely commonplace, significant weight should be accorded the capacity of [the legislature] to amass the stuff of actual experience and cull conclusions from it.

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 28, 96 S.Ct. 2882, 2898, 49 L.Ed.2d 752 (1976) (quoting *United States v. Gainey*, 380 U.S. 63, 67, 85 S.Ct. 754, 757, 13 L.Ed.2d 658 [1965]).

In short, when analyzing the constitutional viability of a statute a court sitting in judgment runs the risk of substituting one set of assumptions for another—to wit, the Legislature's assumptions with its own. It is for this reason, wrote Chief Justice Rehnquist in *Fritz*, that for several decades the Supreme Court "has consistently refused to invalidate on equal protection grounds [economic] legislation which it simply deemed unwise or unartfully drawn." 449 U.S. at 175, 101 S.Ct. at 459.

For these reasons, I accordingly refuse to invalidate General Business Law § 198–a(k) on equal protection grounds. As the Fifth Circuit suggested to the same party, Chrysler, in *Texas Motor Vehicle Commission,* it should take its fight elsewhere—specifically to the legislature—to try to obtain the relief it seeks. *Id.* at 1207.

**(b) § 198–a(k) Does Not Deprive Automakers of Due Process.**

 There is nothing *per se* unconstitutional about binding compulsory arbitration. Indeed, the Supreme Court and this circuit have generally held compulsory arbitration to be constitutional, and have done so in diverse contexts. *See, e.g., Andrews v. Louisville & Nashville Railroad,* 406 U.S. 320, 322, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972) (railway labor disputes); *Textile Workers Pension Fund v. Standard Dye & Finishing Co.,* 725 F.2d 843,

857–58 (2d Cir.1984) (pension fund litigation).

In declaring constitutional a federal statute mandating arbitration to resolve pension fund disputes, the Second Circuit has said that

> [i]t is familiar law that legislative acts adjusting the burdens and benefits of economic life carry with them a presumption of constitutionality and that the person complaining of a due process violation must establish that the legislature has acted in an arbitrary and capricious manner. [Citations omitted.] The same rule prevails even though the effect of the legislation is to impose a new duty or liability based upon past acts.

725 F.2d at 843 (citing *Turner Elkhorn*, 428 U.S. at 15–16, 96 S.Ct. at 2892–2893; *Lee Optical*, 348 U.S. at 487–88, 75 S.Ct. at 464–65).

Indeed, cases holding unconstitutional the delegation of adjudicating authority to private parties have all done so on the ground that the parties to whom the delegation is made lack the impartiality and objectivity which due process requires. *Republic Industries, Inc. v. Teamsters Joint Council*, 718 F.2d 628, 640 (4th Cir. 1983).

Defendant has not asserted and there is no evidence to prove that § 198–a(k) produces arbitrary and capricious results. Nor am I persuaded that § 198–a(k) deprives automakers of an adequate hearing. *See Mathews v. Eldridge*, 424 U.S. 319, 333–34, 96 S.Ct. 893, 901–902, 47 L.Ed.2d 18 (1976).

I am also not persuaded by Chrysler's claims that § 198–a(k) produces inherently biased results. As it was for the Fifth Circuit in *Texas Motor Vehicle Commission*, the touchstone for such an analysis is *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927). In *Tumey* and its progeny the Supreme Court held that it is constitutionally impermissible to subject a litigant to adjudication before a tribunal that has an economic interest in the case's outcome. *Tumey*, 273 U.S. at 523, 532, 47 S.Ct. at 441, 444. *See also Gibson v. Berryhill*, 411 U.S. 564, 578–79,

93 S.Ct. 1689, 1697–98, 36 L.Ed.2d 488 (1972) (holding that a state optometrics board made up entirely of private practitioners could not adjudicate complaints aimed at non-member optometrists employed by corporations).

It cannot seriously be argued that Lemon Law arbitrators have an economic stake in the outcome of cases before them; there is no evidence to support that. Indeed, the law itself requires that arbitration be conducted by independent professionals under regulations "insur[ing] the personal objectivity of its arbitrators." N.Y.Gen. Bus.Law § 198–a(k) (McKinney 1989).

Defendant has not alleged that arbitration resulting in an award against an automaker in any way redounds to the benefit of the arbitrator. Defendant's assertion that the AAA serves "at the whim of the Attorney General," Chrysler's Memorandum in Opposition to Summary Judgment, at 26, is particularly unpersuasive and does not support a claim of arbitrator bias. *Republic Industries*, 718 F.2d at 640 n. 13.

All concede that due process requirements are not the stuff of hard and fast rules. As the Supreme Court has noted,

> "Due process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances ... [Rather, d]ue process is flexible and calls for such procedural protections as the particular situation demands.

*Mathews v. Eldridge*, 424 U.S. at 334, 96 S.Ct. at 902 (citations omitted).

In the case at bar, the following circumstances compel the conclusion that § 198–a(k) affords due process: Lemon Law arbitrators are independent and impartially chosen, consumer relief depends upon a showing of statutorily-defined vehicle unserviceability and arbitration hearings are governed by a myriad of procedural safeguards. Most importantly, arbitrators are not free to fashion their own awards, regardless of a case's equities, but are restricted to denying or granting a consumer a predictable and limited form of relief, a choice between a new car or a refund.

Though arbitrators decide the *fact* of an automaker's liability, the *extent* of that liability is determined by outside factors. In this sense, Lemon Law arbitrators do not enjoy even the discretion of multi-employer pension fund trustees, whose "mixed" administrative-adjudicative role was deemed constitutional in *Keith Fulton & Sons v. New England Teamsters and Trucking Industry Pension Fund*, 762 F.2d 1137, 1142 (1st Cir.1985) (statutory schema in which "[b]oth the fact and the degree of [defendants'] liability" were determined by fund trustees comported with due process). *See also Republic Industries*, 718 F.2d 640 n. 13; *Dorn's Transportation, Inc. v. I.A.M. National Pension Fund*, 578 F.Supp. 1222, 1237–38 (D.D.C. 1984).

Finally, although the aggregate cost to automakers of § 198–a(k) awards may be high,[1] the interest at stake here does not rise to the level of, say, criminal liability or child custody. After all, an award under the Lemon Law can run to no more than the price of an automobile, and the Government is not the beneficiary. While these observations do not vitiate the due process requirement completely, it does suggest that these matters are proper "circumstances" which can be considered in determining whether due process has been afforded under *Mathews* and other Supreme Court decisions. *See, e.g., Weinberger v. Salfi*, 422 U.S. 749, 785, 95 S.Ct. 2457, 2476, 45 L.Ed.2d 522 (1975) ("[t]he Constitution does not preclude such policy choices as a price for conducting [legislative] programs ... [u]nlike criminal prosecutions, or [child] custody proceedings ... such programs do not involve affirmative Government action which seriously curtails important liberties cognizable under the Constitution").

Defendant has made no showing that the Lemon Law fails to afford automakers due process—either in general or under the circumstances particular to this case. The arbitration award in question was not arbitrary or capricious, nor is the impartiality of the particular arbitrator in doubt. I decline to invalidate § 198–a(k) on constitutional grounds.

### 3. The Attorney General's Regulations Conform to the Lemon Law.

■ As noted *supra*, the Lemon Law statute contains specific directives concerning the establishment of the § 198–a(k) arbitration mechanism. Among other things, the statute directs that the mechanism shall "insure the personal objectivity of its arbitrators." N.Y.Gen.Bus.Law § 198–a(k). To this end, the Attorney General's regulations disqualify from service as an arbitrator anyone having "any current connection to the sale or manufacture of motor vehicles." 13 N.Y.C.R.R. § 300.7(b).

Defendant argues that this provision creates bias in that it "serves to ensure that the pool of arbitrators will be skewed in favor of the consumer, since arbitrators will almost certainly be consumers themselves" but perforce will not be automakers. Chrysler's Memorandum in Opposition to Summary Judgment, at 15. Defendant seems to suggest that a more equitable regulatory scheme could be achieved if the provision disqualified anyone who had ever bought a new car from service as an arbitrator. Such a requirement is absurd. If all consumers who had purchased new vehicles were eliminated, there would be very few persons eligible to serve as arbitrators. No specific "skew" has been demonstrated in this case, and therefore, I reject defendant's argument that the law and its implementing regulation must be invalidated.

### 4. Previous Informal Dispute Resolution in 1985 Does Not Preclude Relief in the Instant Action.

■ Defendant contends that, when the Legislature enacted the compulsory arbitration provision of § 198–a(k) in 1986, it intended for it to be an exclusive alternative to informal dispute resolution under § 198–a(g) and (m). Defendant has asked me to accept the implication that an individual seeking resolution of a claim under the earlier provisions is barred from relief under the later. The statute itself, the legis-

---

**1.** In 1987–88, consumer recoveries amounted to more than $32 million. *Annual Report* at 2–3.

lative history and recent case authority clearly demonstrates that defendant's argument is without merit.

First of all, nothing in the Lemon Law or its regulations specifically indicates that a consumer who has sought informal dispute resolution under § 198–a(g) cannot later seek judicial enforcement of an arbitration award made under the Attorney General's § 198–a(k) program.

Second, the legislative history of the statute also indicates otherwise. One of the state's primary goals in enacting the Lemon Law, as noted *supra,* was to provide consumers with new avenues of nonjudicial dispute resolution, not to restrict them. As the Second Circuit has stated,

> [t]he Lemon Law not only permits three separate avenues of relief to remain available to the consumer—[informal manufacturer-based dispute resolution under § 198–a(g)], New York's Attorney General arbitration mechanism [under § 198–a(k)], and judicial relief—but these routes of redress become meaningful under its terms. In various subtle but significant ways these forums differ as vehicles for affording relief—for example ... [a manufacturer's informal dispute resolution] program is binding only on the manufacturer while the State's is binding on both.

*General Motors,* 897 F.2d at 41.

The conclusion defendant would have me reach is further contraindicated by the Second Circuit's holding in *General Motors* that § 198–a(g)

> require[s] a consumer to submit to a manufacturer's existing arbitration program before bringing *suit under the Lemon Law,* but not prior to pursuing relief under the newly created State's Attorney General [§ 198–a(k)] arbitration program ... or prior to seeking judicial relief outside the Lemon Law. In effect, [§ 198–a(g)] ... makes participation in a manufacturer's existing dispute resolution mechanism *a prerequisite* to seeking judicial relief under the Lemon Law.

*Id.* at 40 (emphasis in original).

Furthermore, as § 198–a(h) itself states, "[i]n no event shall a consumer who has resorted to an informal dispute settlement mechanism be precluded from seeking the rights or remedies available by law." Read against the legislative backdrop of the Lemon Law and the cases interpreting it, this statement, along with a nearly identical declaration in § 198–a(f), must be construed to preserve § 198–a(k) relief for persons who have rejected nonbinding arbitration under § 198–a(h). In other words, the "rights or remedies available by law" which are guaranteed to a consumer who has unsatisfactorily resorted to informal dispute resolution include the right to arbitration under the Attorney General's § 198–a(k) program. *See Mountcastle v. Volvoville, USA,* 130 Misc.2d 97, 494 N.Y. S.2d 792, 794–95 (N.Y.Sup.Ct. Nassau Co. 1985); Givens, Supplementary Practice Commentary, N.Y.Gen.Bus.Law § 198–a (McKinney Supp.1989).

Finally, with regard to the facts of the case before me, it is clear that General Business Law § 198–a(k) did not become available to consumers until 1987. In 1985 when plaintiff's Jeep first began to exhibit the complained-of vibrations, plaintiff had only two choices—(1) he could take advantage of the new Lemon Law by resorting to AMC's nonbinding informal dispute resolution program, or (2) he could sue defendant under a breach of contract or warranty theory.

In my view, there is nothing in the statute or case law to suggest that an individual who pursued informal dispute resolution prior to enactment of § 198–a(k) and its compulsory arbitration provisions is precluded from utilizing that arbitration process in addition to the traditional litigation remedies available. Especially in light of the specific language of § 198–a(h) that a consumer who resorts to informal dispute procedures is not precluded from seeking other rights or remedies available to him by law, I believe plaintiff's resort to the compulsory arbitration procedures was entirely proper.

5. *As a Matter of Law, the Arbitrator Did Not Exceed His Authority.*

■ First of all, this is not a plenary action, and defendant is not entitled to a de

novo review of plaintiff's arbitration award. As the Court of Appeals has noted, "General Business Law § 198–a(k) limits [a trial court's] jurisdiction to [CPLR Article 75] review when a consumer elects compulsory arbitration." *Motor Vehicle Manufacturers*, 551 N.Y.S.2d at 475, 550 N.E.2d at 924.

Under CPLR Article 75, a trial court must confirm an arbitration award upon application of a party unless the court discerns one of four specific grounds to modify or vacate the award. N.Y.Civ.Prac.Law § 7510, 7511 (McKinney 1988). One of these is when "an arbitrator ... making the award exceeded his power." N.Y.Civ.Prac.Law § 7511(b)(1)(iii) (McKinney 1988). Such a conclusion must be premised on adequate evidence in the record. *Motor Vehicle Manufacturers*, 551 N.Y.S.2d at 475–476, 550 N.E.2d at 924–925, *citing with approval Mount St. Mary's Hospital of Niagara Falls v. Catherwood*, 26 N.Y.2d 493, 311 N.Y.S.2d 863, 260 N.E.2d 508 (1970). *See also Caso v. Coffey*, 41 N.Y.2d 153, 391 N.Y.S.2d 88, 359 N.E.2d 683 (1976).

 Furthermore, it is well established by New York law that arbitration awards are subject to judicial deference and that arbitrators are not held to the same standards as judges. Indeed, an arbitrator's award cannot be vacated even for apparent errors of law or fact. *Albany County Sheriff's Local 775 v. County of Albany*, 63 N.Y.2d 654, 479 N.Y.S.2d 513, 514, 468 N.E.2d 695, 696 (1984) ("[a]n award will not be vacated even though the court concludes that [the arbitrator's decision] misapplies substantive rules of law, unless it is violative of public policy, or is totally irrational, or exceeds ... his power") quoting *Matter of Silverman [Benmore Coats]*, 61 N.Y.2d 299, 473 N.Y.S.2d 774, 779, 461 N.E.2d 1261, 1266 (1984).

Defendant here contends that the arbitrator in this case "exceeded his power" in three general ways: (a) by failing to set forth a rational basis for his decision and by failing to make findings of fact; (b) by awarding plaintiff a new vehicle and declining to deduct some amount for use of the vehicle; and (c) by considering an affidavit from plaintiff's wife without giving defendant the opportunity to cross-examine her and by failing to consider evidence of the prior nonbinding arbitration.

As a matter of law, none of these contentions warrants my modifying or vacating plaintiff's award. Therefore, summary judgment for plaintiff is appropriate.

(a) The Arbitrator's Finding That Plaintiff Qualified for Relief Had a Rational Basis.

 Defendant's claim that the arbitrator exceeded his authority by failing to set forth a rational basis for his decision and by failing to make findings of fact is not supported by applicable authority. Nowhere in the Lemon Law or in CPLR Article 75 does such a requirement exist. Indeed, CPLR Article 75 requires nothing more than that an arbitrator's decision be in writing, signed and dated, as defendant itself acknowledges. *See* Chrysler's Opposition to Summary Judgment, at 22. *See* N.Y.Civ.Prac.Law § 7507 (McKinney, 1989); 13 N.Y.C.R.R. § 300.17(a).

 Defendant also asserts that the arbitrator was irrational in finding that plaintiff's Jeep was "substantially impaired" by the terms of § 198–a(c) and (d) and therefore qualified for replacement. In this case, plaintiff claimed before the arbitrator that his Jeep was indeed a "lemon," and swore that it met the threshold requirements for relief—four or more trips to the mechanic and sixty-plus days out of service—during the statutory period. Defendant objected, but the arbitrator found plaintiff's claim to be more credible and ruled for plaintiff.

These are precisely the kind of conclusions a competent arbitrator should and must draw, and I am not entitled to second-guess them. As the Court of Appeals put it, "it need only appear from the decision of the arbitrator[ ] that the criteria specified in the statute were 'considered' in good faith and that the resulting award has a 'plausible basis' " in order for the award to be upheld. *Caso*, 391 N.Y.S.2d at 91–92,

359 N.E.2d at 686–687 (citations omitted). Furthermore, "[a]n award may be found to be rational if any basis for such a conclusion is apparent to the court." *Id.* at 91, 359 N.E.2d at 686. In short, unless an impartial arbitrator's conclusions appear irrational or are unsupported by the evidence—and that is clearly not the case here—they control. *Motor Vehicle Manufacturers*, 551 N.Y.S.2d at 475–476, 550 N.E.2d at 924–925.

(b) The Arbitrator's Award of a New Jeep Was Within His Power.

 Defendant alleges that the arbitrator exceeded his authority by awarding plaintiff a new Jeep, in that a new Jeep was not a "comparable vehicle" for the purposes of § 198–a(c)(1). Defendant also claims that the arbitrator should have deducted an amount to reflect plaintiff's use of the vehicle. This would have the effect of making plaintiff pay a fee to Chrysler which reflects in some way the mileage on the vehicle in order to get a new Jeep.

Recently, the New York Supreme Court in Monroe County reviewed a substantially similar challenge to a Lemon Law arbitration award in which the arbitrator treated a two-year old Subaru as a "new" car for the purposes of § 198–a(c)(1). *Subaru of America v. McKelvey*, 141 Misc.2d 41, 532 N.Y.S.2d 617, 618 (N.Y.Sup.Ct. Monroe Co. 1988). The court in *McKelvey* held that:

"The issue ... was for the arbitrator to determine, and it cannot be said that his determination lacks a rational basis".... It was for the arbitrator to decide if the automobile was 'new'.... [and i]f there was any mistake in this matter it is one of fact and law; it is not jurisdictional. The statute requires the arbitrator to make decisions such as the one made here.

532 N.Y.S.2d at 618 (quoting *Chrysler Motors Corp. v. Schachner*, 138 Misc.2d 501, 525 N.Y.S.2d 127, 132 [N.Y.Sup.Ct. Rockland Co.1988] [upholding as not "irrational" an arbitrator's determination that a plaintiff qualified as a "consumer" for Lemon Law purposes] ). *See also General Motors Corp. v. Smaller*, 142 Misc.2d 497, 537

N.Y.S.2d 721, 722 (N.Y.Sup.Ct. Nassau Co. 1988).

Furthermore, it appears from the clear language of § 198–a that a mileage deduction applies only to consumers who opt to receive refunds—not to those taking replacement vehicles. General Business Law § 198–a(c)(1) provides that a consumer qualifying for relief can elect as compensation either a comparable vehicle or a "refund [of the] full purchase price ... plus fees and charges"; the same paragraph then goes on to state that such fees and charges

shall include but not be limited to all license fees, registration fees and any similar governmental charges, *less an allowance* for the consumer's use of the vehicle....

(emphasis added).

The mileage deduction formula for refunds is set forth in a different paragraph, § 198–a(a)(4). But, no such deduction formula regarding replacement vehicles is mentioned. Had the New York legislature intended such an allowance, they could have said so.

Indeed, the Second Circuit's recent *General Motors* decision, *supra*, suggests that the arbitrator's decision to award a brand-new Jeep was not merely permissible under state law but may have been *necessary*.

An arbitrator should not be allowed to award the fair value of a defective transmission on the fifth attempt at repair ... where state law requires a full refund or replacement of the "lemon" vehicle after the fourth attempt.

*General Motors*, 897 F.2d at 43.

As a matter of law, the arbitrator did not exceed his authority by awarding plaintiff a new vehicle.

(c) The Arbitrator's Decision Complied With Regulations Governing Evidence of the Prior Arbitration and Did Not Improperly Deny Cross–Examination.

 Regulations promulgated by the Attorney General to implement the Lemon Law require that the arbitrator receive in evidence the decision of the nonbinding ar-

bitration procedure and "give it such weight as [he] deems appropriate." 13 N.Y.C.R.R. § 300.13(d). In this case, although it is unclear whether the arbitrator received a copy of the one-page decision itself, both sides agree that the arbitrator received a detailed description of the previous arbitration procedure and the result from both parties. Defendant has made no assertion that this arbitration did not meet the standards of *Caso, supra,* that is, "that the criteria specified in the statute [be] considered [by the arbitrator] in good faith." 391 N.Y.S.2d at 91–92, 359 N.E.2d at 686–687 (citations omitted). The award should not be vacated for this reason.

■ Defendant points to the requirement of § 198–a(k) that parties have the opportunity to "rebut or refute [their opponent's] presentation" in arguing that this award fails because of the arbitrator's alleged refusal to permit cross-examination of plaintiff's wife regarding her affidavit. First of all, no specific requirement of cross-examination in Lemon Law arbitration was provided for by the Legislature.

Second, this arbitration is not a full-blown court proceeding and not susceptible to a courtroom's strict procedural safeguards. 13 N.Y.C.R.R. § 300.13(c). As the Court of Appeals noted in *Motor Vehicle Manufacturers,* insofar as "[arbitrators] are required to follow a specific procedure outlined in the statute and regulations to resolve fact-specific issues and grant one of only two types of specific relief ... the Legislature has provided for accountability." *Motor Vehicle Manufacturers,* 551 N.Y.S.2d at 477, 550 N.E.2d at 926.

Chrysler had every opportunity to rebut plaintiff's claim and to present its case to the arbitrator.

### C. Fees.

The Lemon Law deals specifically with the issue of attorneys' fees:

> A court may award reasonable attorney's fees to ... a consumer who prevails in any judicial action or proceeding arising out of an arbitration proceeding held pursuant to [§ 198–a(k)].

N.Y.Gen.Bus.Law § 198–a(*l*).

This provision was "designed to protect consumers from being worn down by pro-

tracted post-arbitration litigation even where the decision of an arbitrator awarding relief under the ... Lemon Law is upheld." Givens, *id.* (McKinney Supp. 1990). Numerous New York decisions have granted reasonable attorney's fees to consumers who have prevailed in court in enforcing awards made pursuant to § 198–a(k). *See, e.g., General Motors Corp. v. Fischer,* 140 Misc.2d 243, 530 N.Y.S.2d 484, 485 (N.Y.Sup.Ct. Broome Co.1988) ("the Legislature intended the 'prevailing consumer' to be entitled to an award of attorney's fees"); *Conlan v. General Motors Corp.,* 137 Misc.2d 244, 520 N.Y.S.2d 139, 140 (N.Y.Sup.Ct. Onondaga Co.1987).

Plaintiff is entitled to such an award fee.

There is no question that plaintiff is also entitled to recover the $200.00 filing fee, § 198–a(*l*), as well as a $500 award for non-compliance with the arbitrator's decision. § 198–a(h).

Plaintiff is entitled to reasonable attorneys fees and costs. Plaintiff shall submit to the Court within fifteen (15) days an affidavit, and other supporting material if necessary, setting forth the amount requested and the basis for the fee request. Chrysler shall have ten (10) days after receipt of plaintiff's submissions to interpose any objection to the amount of the fee request.

### III. CONCLUSION.

For the above reasons, plaintiff's motion for summary judgment is granted and the arbitration award entered in plaintiff's favor is confirmed in all respects.

The Court shall determine by separate order the amount due plaintiff as recoverable fees, costs and attorneys fees.

IT IS SO ORDERED.