Keating, J.
 

 By permission of this court, the New York City Housing Authority appeals from an order of the Appellate Division, First Department, unanimously affirming, without opinion, an order of the Supreme Court, New York County (Lyman, J.), which, on motion of the respondent, Wilaka Construction Co., directed the parties to arbitrate a dispute for extra compensation arising out of a construction contract between them.
 

 The contract contains certain conditions precedent to invoking arbitration, and it is the alleged failure of Wilaka to abide by them which gives rise to the present controversy.
 

 On this appeal, both parties agree that Special Term erred in holding that the fulfillment of conditions precedent to arbitration is a question for the arbitrator. That question is for the court.
 
 (Matter of Exercycle Corp. [Maratta], 9
 
 N Y 2d 329;
 
 Matter of Rosenbaum [American Sur. Co.],
 
 11 N Y 2d
 
 *199
 
 310;
 
 Matter of Lipman [Haeuser Shellac Co.],
 
 289 N. Y. 76;
 
 Matter of Board of Educ. [Heckler Elec. Co.],
 
 7 N Y 2d 476.)
 

 The facts are undisputed, and the primary questions of law presented are whether the contractor, Wilaka, failed to comply with time requirements of the contract for invoking arbitration of a claim and, if it did, whether the claim may nonetheless be arbitrated because the Housing Authority waived compliance.
 

 Before turning to the facts, we briefly outline the pertinent provisions of the contract.
 

 Wilaka undertook to serve as general contractor for the construction of a housing project known as West Brighton Houses.
 

 Article 15 of the contract deals with disputes. Section a makes time of the essence, and it accordingly provides, in substance, that all work directed by the Authority shall be performed by Wilaka without delay ‘ ‘ reserving to the parties the right to have determined by the method in this Contract provided all questions relating to compensation, damages, or other payments of money.”
 

 Subdivision (1) of section b deals with
 
 “Disputes as to Money Payment or for Damages
 
 * * *
 
 Conditions Precedent To Recovery.
 
 ” If the contractor claims that any direction involves “Extra Work entailing extra cost,” he must, within five days after receipt of such instructions and before executing the work, ‘
 
 ‘
 
 file with the Authority written notice of his intention to make a claim for extra compensation ’
 

 “ The filing by the Contractor of a notice of claim * * * within the time limited herein, shall be a condition precedent to the settlement of any claim or to the right of appeal to arbitration as hereinafter provided”.
 

 Subdivision (2) of section b gives the Authority power to determine whether work required is extra work or whether the contractor is entitled to compensation for damages and such determination shall be final, subject to the provisions of the paragraphs entitled “Appeal from Decision ” and “Arbitration.” Until a determination is made following a claim by the contractor “ as above provided ” for extra work, the contractor shall not proceed with the work.
 

 Section c is entitled
 
 “Appeal from Decision.”
 
 It provides that the decision of the Authority “made upon the notice of claim” “ shall be conclusive and binding upon the Contractor
 
 *200
 
 unless within ten (10) days from the service upon the Contractor of written notification of such decision, the Contractor files with the Authority * * * a notice of intention to arbitrate ”.
 

 The failure of the Authority to make a decision within 30 days shall be deemed a denial of the claim, and the contractor has 10 days thereafter to demand arbitration. ‘ ‘ In default of such notice of intention to arbitrate within the time limited herein, the Contractor shall be deemed to have ratified such decision and to have waived any and all rights and remedies which he might otherwise have had, and the service of such notice of intention to arbitrate within the time limited, shall be a condition precedent to the right to appeal to' arbitration ’ ’.
 

 Section d deals with the arbitration procedure itself but, for our purposes, it need not be considered.
 

 We turn now to the facts.
 

 The contract was made on September 29, 1960 and, among other things, it required. Wilaka to construct the framework “ true and plumb ” within certain tolerances. Wilaka engaged Lafayette Ironworks, Inc., to perform this work.
 

 On May 16,1961 the Authority informed Wilaka that columns in certain buildings were out of plumb. It asked what corrective measurements would be taken and stated, ‘ ‘ Any remedial work which may be necessary is to be done by you without added cost to the Authority.”
 

 Wilaka answered on July 6, 1961 that it was enclosing a technical report from a consulting firm employed by Lafayette along with three letters from Lafayette, all dated June 8, 1961. The letter from Wilaka to the Authority asks the Authority to consider the technical report and the letters, and to inform Wilaka so that it may proceed with corrective measures. The letters from Lafayette to Wilaka and the technical report make it clear that Lafayette attributed the problem to faulty construction plans.
 

 The Authority wrote back on July 14, 1961, acknowledging receipt of Wilaka’s letter and the technical report, but indicating that Wilaka had forgotten to enclose the letters from Lafayette to Wilaka. “ In any event ”, wrote the Authority,
 
 “
 
 it should be emphasized that no contractual relationship exists between [Lafayette] and the Authority.” “ We wish to remind you, in this connection, that any corrective work that is needed * * *
 
 *201
 
 must be done at your cost and expense ”, notwithstanding the technical report which attributed fault to the Authority’s plans.
 

 The extra expenses allegedly incurred by Lafayette form the basis of Wilaka’s claim here;
 

 Wilaka responded on July 24, 1961 and requested a meeting “for the purpose of resolving, if possible, the question of responsibility for the existing condition and a determination as to the nature and extent of the corrective work required.”
 

 The Authority answered on August 8, 1961. They acknowledged the conflict on the question of responsibility, reiterated their position that corrective work must be done at
 
 11
 
 your [Wilaka’s] cost and expense ”, refused to consider the claim by Lafayette “ with whom we have no contractual relationship ”, and stated, “ Such claims, if made, should be made by you in writing in accordance with the provisions of the contract.”
 

 Ten days later, on August 18,1961, Wilaka again wrote to the Authority. To avoid further misunderstanding, Wilaka made it clear that, in forwarding the technical report and letters from Lafayette, it was acting on behalf of itself as well as Lafayette, and it would “ in due course, submit [a] claim for all of the increased costs incurred ”, but in the meantime “ to resolve the existing impasse, we are prepared to proceed with the suggested remedial measures ”. Such work, however, would be done “without prejudice and subject to later determination as to responsibility for the increased costs ”.
 

 The final letter of significance here was sent by the Authority to Wilaka, dated August 22,1961. The crucial portions state:
 

 “We have received your letter of August 18, 1961 * * *
 

 “We note your statement * * * that you will submit your claim of increased costs incurred by your structural steel contractor [and that] you were acting on behalf of your subcontractor as well as yourselves.
 

 “ We herewith direct you to proceed in accordance with your proposed corrective measures * * *
 

 ‘1 In accordance with our interpretation of the Contract you are responsible for all increased costs due to lack of plumbness * * *
 
 However, we will give your claim consideration in accordance with the terms of the Contract, when
 
 received.” (Emphasis added.)
 

 
 *202
 
 The letters which follow deal primarily with the technical aspects of the corrective work.
 

 The steel work was completed by the end of January, 1962. The buildings were completed and occupied between August and December, 1962. Lafayette submitted its claim to Wilaka the following month (January 22, 1963). Wilaka forwarded the claim to the Authority on February 5, 1963. The Authority rejected the claim on March 15, 1963; and Wilaka, seven days later, on March 22, 1963, gave the Authority formal written notice of intention to arbitrate the dispute in accordance with section (article) 15 of the contract. This letter went unanswered, as did subsequent letters of June 7, 1963 and July 18, 1963, requesting the Authority to comply with the arbitration provisions. On August 5, 1963 Wilaka commenced this proceeding to compel arbitration.
 

 The claim is for $291,786.04 for the extra work performed by Lafayette, and $37,500 representing a claim by Wilaka for additional compensation.
 

 Upon these facts, the question of law is on what date did petitioner first claim that a direction from the Authority involved “Extra Work entailing extra cost.” Subdivision (1) of section b dealing with disputes allows but five days thereafter in which to serve notice of intention to make a claim for extra compensation.
 

 Ordinarily, the question of whether the contractor has complied with the condition precedent to arbitration, namely, the filing requirement imposed upon it by the agreement, is for Special Term. Here, however, there is no need to remit to that court since examination of the documents establishes, as a matter of law, that the condition precedent was satisfied.
 

 The Authority’s letter of May 16, 1961 created neither a dispute nor an extra claim. Indeed, Wilaka had no first-hand information on the alleged matter, and first had to contact its subcontractor, Lafayette.
 

 Wilaka’s answer of July 6,1961 merely supplied the requested information and asked for further instructions. The tenor of the letter itself refutes any indication of a dispute. To the extent that Lafayette’s letters, included thereafter, suggested a claim, the Authority was already, in fact, being given notice of a possible claim.
 

 
 *203
 
 The Authority’s letter of July 14,1961 reiterated the need for corrective work at Wilaka’s expense, and Wilaka, 10 days later, requested a meeting to resolve the question of responsibility and determine the extent of extra work required.
 

 WTien this meeting was refused by the Authority’s letter of August 8, Wilaka wrote to the Authority on August 18, made it clear beyond question that they intended “ to make a claim for extra compensation ” and would proceed with the work, without prejudice,
 
 as soon as the Authority approved the remedies suggested by the subcontractor.
 

 The only conclusion possible, therefore, is that Wilaka’s letter of August 18 was a timely assertion of its intention to make a claim for extra compensation. All of the letters which preceded it failed, in one way or another, to satisfy the circumstances under which Wilaka was required to file — and not until this date was there a
 
 dispute
 
 in which Wilaka
 
 Tcnew
 
 that there would be an extra work claim. In fact, it could be argued that the five-day period did not start to run until the Authority’s letter followed on August 22, 1961, since only that letter constitutes a
 
 direction
 
 to do work and gives the necessary approval of the proposed corrective measures to be taken.
 

 After giving notice of intention to make a claim, Wilaka was required by the contract to give further notice of intention to arbitrate if the claim was rejected by the Authority within a specified period. Those provisions, however, were clearly waived by the Authority in its letter of August 22, 1961 when it stated 1 ‘ However, we will give your claim consideration in accordance with the terms of the Contract, when received.” Read in the context of the letters preceding and following it, both parties intended that the work be proceeded with, and that the Authority would consider the claim
 
 ‘1
 
 when received. ’ ’ The phrase, "in accordance with the Contract ”, does not bar a waiver. In context, it relates to the merits only.
 

 The Authority’s rejection of the claim, dated March 15, 1963, followed by Wilaka’s notice of intention to arbitrate, dated March 22, complied, as indicated above, with the time provisions of the agreement, and, therefore, this court is warranted in concluding that Wilaka is entitled to have the claim heard on its merits at arbitration.
 

 
 *204
 
 The Authority raises two other objections to arbitration.
 

 It claims first that the dispute sought to be arbitrated does not come within the class of those things which it agreed to arbitrate. The argument is based on the assertion that, while Wilaka alleges a claim for
 
 extra
 
 work, it is really seeking to recover only for
 
 corrective
 
 work. The answer to this depends on whether fault is ultimately placed with the Authority for faulty plans or with Lafayette for faulty work, and that issue is for the arbitrators, not for the courts. Moreover, the arbitration provision, authorizing as it does submission of ‘' all questions relating to compensation, damages, or other payments of money ’ ’, is quite broad.
 

 The Authority also contends that the alleged disagreement is not bona fide within the meaning of the
 
 Cutler-Hammer
 
 doctrine
 
 (Matter of International Assn. of Machinists [Cutler-Hammer, Inc.],
 
 271 App. Div. 917, affd. 297 N. Y. 519) and that it is, therefore, not an arbitrable dispute.
 

 Without passing on this assertion of non bona fide, it is sufficient to point out that the so-called
 
 Cutler-Hammer
 
 doctrine has been overruled by CPLR 7501 (formerly Civ. Prac. Act, § 1448-a). Under this provision, the court may not consider “ whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute.”
 

 The contention that CPLR 7501 does not apply to arbitration agreements entered into before its effective date seems equally lacking in merit. This statutory section affords no new rights —'it merely affects the jurisdiction of the court to consider a particular question, and it speaks in the mandatory present tense, without any indication that it is not to be applied to arbitration agreements entered into before its effective date. (See
 
 Matter of Berkovitz
 
 v.
 
 Arbib & Houlberg,
 
 230 N. Y. 261 [1921].)
 

 As noted above, we granted leave in this case and it is appropriate to note that, despite a possible argument to the contrary (see 8 Weinstein-Korn-Miller, New York Civil Practice, par. 7502.08, pp. 75-50, 75-51), an order of the Appellate Division directing arbitration or denying a stay of arbitration is deemed final and appealable as such to this court (see
 
 Matter of De Luca [MV AIC],
 
 17 N Y 2d 76;
 
 Matter of Wilson [MV AIC],
 
 16 N Y 2d 482;
 
 Matter of C. W. Regan, Inc.
 
 v.
 
 Compudyne Corp.,
 
 16
 
 *205
 
 N Y 2d 481; Cohen and Karger, Powers of the New York Court of Appeals, § 31).
 

 The order appealed from should he affirmed, without costs.
 

 Chief Judge Desmond and Judges Fuld, Van Voorhis, Burke, Scileppi and Bergan concur.
 

 Order affirmed.