OPINION OF THE COURT
Meyer, J.
Because arbitration will not be stayed unless the entire controversy is nonarbitrable, participation in an arbitration involving one or more arbitrable issues does not waive the participant’s right to seek vacatur of the award as in excess of the arbitrator’s powers pursuant to CPLR 7511 (subd [b], par 1, cl [iii]). An award may not be vacated at the instance of a participant, however, unless the limitation on the arbitrator’s powers is contained, explicitly or by reference, in the arbitration clause itself, and the particular aspect of the award which, it is claimed, the arbitrator lacked power to make has been brought to the attention of the court requested to confirm (or vacate) the award, or it is clear that the opposing party has not *303 been prejudiced by the failure to do so. In Matter of Silverman (Benmor Coats) there should be an affirmance because the limitation urged was not specifically related to the power of the arbitrator. In Norris v Cooper there should be an affirmance because although the limitation now claimed was stated in the arbitration clause, it was waived by respondent’s failure to raise it in opposition to the petition for confirmation of the award.
I
In Matter of Silverman petitioner’s decedent owned 70% of the shares of Benmor Coats, Inc. (Benmor). The remaining shares were held by Paul Levy and Arthur Saretsky. Benmor was indebted to Silverman in the amount of $70,000, which was, however, subordinated to past and future creditors of Benmor who became such prior to January 1, 1980.
Silverman died in July, 1979, and on November 7,1979, petitioner (his widow and the executrix of his estate) entered into a settlement agreement with Benmor, Levy and Saretsky, under which Benmor purchased the estate’s shares. Paragraph 5 of that agreement dealt with the subordinated loan by Silverman to the corporation, which had by then been reduced to $64,000. It was agreed in subparagraph 5.02 that the parties would meet in January, 1980 to negotiate repayment of the loan “subject to the consent of the Bank and trade creditors, and subject further to the business conditions then affecting Benmor.” Levy and Saretsky were appointed attorneys-in-fact for plaintiff and the estate with power to execute all documents necessary to continue subordination of the unpaid balance. Arbitration was provided for in subparagraph 5.05, which read, in pertinent part: “Any dispute with respect to the obligations of this Paragraph 5 including the ability of Benmor to make payments shall be settled by Arbitration in the City of New York before the American Arbitration Association pursuant to the rules of that Association, and any decision of the Association may be enforceable in any court of competent jurisdiction.”
The January, 1980 meeting was never held because Benmor informed the estate that neither the bank nor the *304 trade creditors would consent to an alteration of the subordination agreement. On April 24, 1980, the estate served its demand for arbitration, stating that “Benmor has failed to make payment as required by Paragraph 5” of the settlement agreement, and seeking interest payments in default and principal payments as per paragraph 5. Prior to the arbitration hearings, Paul Levy, acting as attorney-in-fact under the settlement agreement, resubordinated the loan for 1981.
The arbitrator’s award directed payment of interest then due and required payment thereafter of interest at the rate of 6% of the unpaid balance. With respect to principal, it provided that the attorney-in-fact for Benmor could continue to execute subordination documents but required principal payments by Benmor of $650 per mohth for each of the last six months of 1981 and, commencing April 1, 1982 and yearly thereafter, of 35% of Benmor’s after-tax net income until the loan was paid in full, after-tax net income being computed, however, by excluding salaries in excess of $40,000, travel and entertainment in excess of $20,000 and by also adjusting Benmor’s income taxes to those limitations. The award made no reference to creditors’ consent to such payments.
The estate moved to confirm, and Benmor cross-moved to vacate the award. Benmor argued that the arbitrator had exceeded his power in ordering repayments of principal even though neither bank nor trade creditors had consented to such repayments. Supreme Court granted the motion to confirm, noting that the arbitrator had taken the creditors’ interests into account by awarding only minimal principal repayments in 1981 and by tying subsequent repayments to after-tax profits, and that, therefore, the subordination provisions of the settlement agreement had not been violated. The Appellate Division, one Justice dissenting, affirmed. The majority reasoned that the arbitrator, having fashioned an award which avoided imperiling the creditors for whom the subordination agreement was made, had not exceeded his powers. The dissenter concluded that bank and trade creditors were necessary parties and an award without their consent was both in excess of the arbitrator’s power and prejudicial to Benmor.
*305 In Norris v Cooper, in the spring of 1969, petitioner Norris was succeeded by respondent Cpoper as exclusive importer and distributor for the United States of Twining Tea. In December, 1969, Cooper and Norris executed an agreement under which Norris was to act as consultant to a company (Cooper Co.) to be formed by Cooper to carry out the distributorship. Paragraph 4 of the agreement provided that as consideration for his assistance, Norris was to receive 50% of “the annual after-tax net operating profits” during 1971 through 1975 and 25% of such profits thereafter. Paragraph 4(d) of the agreement, as amended, provided: “The determination of ‘after-tax net profits’, ‘after-tax net operating profits’ and ‘gross profits on sales’ of [Cooper Co.] will be made by the then independent public accountants for [Cooper Co.], which determination shall be final, conclusive and binding upon the parties. Such determination shall be made in accordance with generally accepted accounting principles, applied on a consistent basis”. Excluded from the computation, however, were operating profits from any activity of Cooper Co. other than its Twining Division and salary in excess of $30,000 paid to Cooper. Arbitration was provided for in paragraph 8, which read: “Any controversy, claim, or dispute arising out of or relating to this agreement, or the interpretation or breach thereof, except as otherwise provided in paragraph 4 above, shall be settled by arbitration in the City of New York, in accordance with the laws of the State of New York and the rules then obtaining of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.”
On December 5, 1979, Twining notified Cooper Co. of its intention not to renew the distributorship when it expired on December 31, 1981. Twining then formed Grosvenor Marketing Limited, a Delaware corporation, and assigned to it effective January 1, 1980, with Cooper Co.’s consent, all of Twining’s rights and obligations under its agreement with Cooper Co. On March 31,1980, Grosvenor and Cooper Co. entered into an agreement canceling the latter’s distributorship effective January 1, 1980.
*306 The cancellation agreement between Grosvenor and Cooper Co. recited*that since January 1, 1980, Cooper Co. had distributed Twining Teas solely for the benefit of Grosvenor and that all income, profits, expenses and liabilities since that time were for Grosvenor’s account. The consideration payable to Cooper Co. under the cancellation agreement was $3,040,000, of which $3,000,000 was allocated to the cancellation of the distributorship agreement and $40,000 to Cooper Co.’s agreement not to compete in the sale of tea or tea products for four years thereafter. The accountant’s statement, prepared May 21, 1980 for the period ending March 31, 1980, showed income of Cooper Co. for the first three months of 1980 of $337,297, which it noted was to be transferred to Grosvenor pursuant to the cancellation agreement. It also noted as a contingent liability Norris’s claim that Cooper Co. was liable to him for consulting fees based on 25% of the company’s after-tax operating profit, and that on March 31, 1980, Cooper Co. had adopted a plan of liquidation under the Internal Revenue Code which “excludes from taxation the gains resulting from * * * the distributorship cancellation agreement.” Thereafter Norris demanded arbitration, claiming breach of Cooper’s agreement with him that Cooper Co. would pay him an agreed portion of its annual profits. The arbitrator awarded him $26,694 as the “year end balance for 1979” plus $750,000 for “disposition of assets.”
Norris petitioned for confirmation of the award and Cooper cross-moved to vacate it on the ground that the arbitrator exceeded his powers and the award was manifestly irrational. The claimed excess of power detailed in the moving papers was stated to be that “it does not reflect in any way the taxes Cooper would have to pay on the $3,000,000 consideration, and hence violates the contractual requirement that the 25% payment be computed on ‘after-tax net operating profits’ ” and that it failed to deduct expenses. Special Term confirmed the award and the Appellate Division affirmed, both without opinion.
In each case, appellant argues that the arbitrator exceeded his power. In Matter of Silverman, it is argued, additionally, that the creditors were necessary parties.
*307 II
CPLR article 75 evidences in numerous ways the intent of the Legislature that, once it is clear that a valid agreement to arbitrate has been made and complied with and that the claim sought to be arbitrated is not barred by limitations, the authority of the arbitrator is plenary. Thus, CPLR 7501 mandates that “the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute”; a party served with notice of intention to arbitrate who does not within 20 days thereafter raise the objections that a valid agreement to arbitrate was not made or complied with or assert the bar of a time limitation is thereafter precluded from raising such objections (CPLR 7503, subd [c]) and even if not so served is barred from raising those objections by participation in the arbitration (CPLR 7511, subd [b], par 2); and every procedural right provided for in the article other than the right to be represented by counsel is waived either by written consent or simply by continuing with the arbitration without objection (CPLR 7506, subds [d], [fj; 7511, subd [b], par 1, cl [iv]). The only basis upon which an award can be vacated at the behest of a party who participated in the arbitration or was served with notice of intention to arbitrate is that the rights of that party were prejudiced by corruption, fraud or misconduct in procuring the award, partiality of an arbitrator, that the arbitrator exceeded his power or failed to make a final and definite award, or a procedural failure that was not waived (CPLR 7511, subd [b], par 1).
It follows that any limitation upon the power of the arbitrator must be set forth as part of the arbitration clause itself, for to infer a limitation from the substantive provisions of an agreement containing an arbitration clause calling for arbitration of all disputes arising out of the contract, or for arbitration in some other broadly worded formulation, is to involve the courts in the merits of the dispute — interpretation of the contract’s provisions — in violation of the legislative mandate (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co., 37 NY2d 91, 95; see Matter of Wilaka Constr. Co. [New York City Housing Auth.], 17 NY2d 195; Siegel, NY Prac, §§ 589, 590). Consis *308 tent with that policy, a broad arbitration clause is held to submit to the arbitrator questions of fraud in the inducement, except as related to the arbitration clause itself or as the alleged fraud can be shown to permeate the entire contract (Matter of Weinrott [Carp], 32 NY2d 190), as well as compliance with notice and time conditions precedent to arbitration set forth in the arbitration clause itself (Matter of Tilbury Fabrics v Stillwater, Inc., 56 NY2d 624; Matter of United Nations Dev. Corp. v Norkin Plumbing Co., 45 NY2d 358). To exclude a substantive issue from arbitration, therefore, generally requires specific enumeration in the arbitration clause itself of the subjects intended to be put beyond the arbitrator’s reach.*
Moreover, absent provision in the arbitration clause itself, an arbitrator is not bound by principles of substantive law or by rules of evidence (Lentine v Fundaro, 29 NY2d 382). He may do justice as he sees it, applying his own sense of law and equity to the facts as he finds them to be and making an award reflecting the spirit rather than the letter of the agreement, even though the award exceeds the remedy requested by the parties (Matter of Sprinzen [Nomberg], 46 NY2d 623, 631; Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., 45 NY2d 411, 418; Matter ofRaisler Corp. [New York City Housing Auth.], 32 NY2d 274, 283). His award will not be vacated even though the court concludes that his interpretation of the agreement misconstrues or disregards its plain meaning or misapplies substantive rules of law, unless it is violative of a strong public policy, or is totally irrational, or exceeds a specifically enumerated limitation on his power (Matter of Local Div. 1179, Amalgamated Tr. Union [Green Bus Lines], 50 NY2d 1007; Matter of Sprinzen [Nomberg], supra; Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578, 582). Nor will an arbitration award be vacated on “ ‘the mere possibility’ ” *309 that it violates an express limitation on the arbitrator’s power (Matter of Tilbury Fabrics v Stillwater, Inc., 56 NY2d, at p 627).
Generally the contention that a claim proposed to be submitted to arbitration is in excess of the arbitrator’s power is waived unless raised by an application for a stay (CPLR 7503; Matter of Tilbury Fabrics v Stillwater, Inc., 56 NY2d 624; supra; Matter of Board of Educ. [Hess], 49 NY2d 145, 151; Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578, 583, supra). An application for a stay will not be granted, however, even though the relief sought is broader than the arbitrator can grant, if the fashioning of some relief on the issue sought to be arbitrated remains within the arbitrator’s power (Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., 45 NY2d 411, 418-419, supra). Moreover, the tendency of the courts is to read a limitation on the arbitrator’s power narrowly and allow the arbitration to proceed (compare Information Sciences v Mohawk Data Science Corp., 43 NY2d 918, 920, and Matter of Macy & Co. [National Sleep Prods.], 39 NY2d 268, 271, with Bowmer v Bowmer, 50 NY2d 288, 294-296). Thus, it is only when the sole matter sought to be submitted to arbitration is clearly beyond the arbitrator’s power that a stay will be granted (Clifton-Fine Cent. School Bd. of Educ. v Wisner, 59 AD2d 50, 51, mot for lv to app den 43 NY2d 643).
That a stay cannot be obtained does not foreclose postarbitration reliance upon a claimed limitation on the arbitrator’s power. The limitation will not be waived if the party relying on it asserts it at Special Term in opposition to an application for confirmation or as the basis for a motion to vacate (CPLR 7511, subd [b], pars 1, 2). Failure to do so will, however, waive the claimed limitation and proscribe its consideration by the courts (Matter of Tilbury Fabrics v Stillwater, Inc., 56 NY2d 624, 626, supra, affg 81 AD2d 532, 533).
Ill
Against the foregoing background the specific contentions of the parties may be evaluated.
The arbitration clause in Matter of Silverman covers any dispute with respect to the subordinated loan, without *310 limitation. Expressly included is “the ability of Benmor to make payments.” Although a distinction can be drawn between the ability to pay, and the right to pay, any part of the subordinated loan without the consent of the creditors, drawing it would involve the courts in the merits of the issue to be arbitrated: the right of the estate to principal payments under paragraph 5. Absent an express limitation on the power of the arbitrator (as distinct from the limitation of Benmor’s obligation to pay set forth in subparagraph 5.02), the award made did not exceed his power.
Nor were the creditors necessary parties to the confirmation proceeding. Although the award mandates payment to Benmor before all creditors have been paid in full, it cannot be said that confirmation of the award will “inequitably affect” them (see CPLR 1001, subd [a]). They are not bound by it, of course, and retain whatever right they have under the subordination agreement to proceed against both Benmor and the Silverman estate, both of which are parties to that agreement, if in their view it has been violated.
The Norris arbitration clause explicitly limits the controversies, claims or disputes that may be arbitrated by the phrase “except as otherwise provided in paragraph 4 above.” Subdivision (d) of paragraph 4 made the accountants’ determination of after-tax net profits and after-tax net operating profits “final, conclusive and binding upon the parties” provided only that the determination “be made in accordance with generally accepted accounting principles, applied on a consistent basis”. Whether the latter condition had been met, therefore, remained within the competence of the arbitrator, as did the question whether Cooper was in default as to the payment due for the last quarter of 1979. That being the case, Cooper’s failure to seek a stay of arbitration did not waive his right to move for vacatur of the award on the ground that in determining that Norris was entitled to $750,000 for “disposition of assets” the arbitrator had intruded upon an area which was the exclusive province of the accountants, and thus had exceeded his power.
It was, however, waived by Cooper’s failure to advance before Special Term the specific argument now made to us *311 that by failing to include the $3,000,000 payment to Cooper Co. as profits in its financial statement for the period, the accountants had conclusively determined that it did not constitute profits. Cooper argued only that the award did not reflect taxes paid and that it made no allowance for expenses. Those arguments necessarily assumed that the $3,000,000 payment to Cooper Co. constituted “profits” within the meaning of the agreement. Norris, therefore, had no reason to address in the courts below the question whether the payment was profits. The fact that Cooper had earned (but transferred to Grosvenor) $337,297 during the first three months of 1980 suggests that, during the 24 months Cooper Co.’s distribution rights (and Norris’s consulting fees) would have continued but for the cancellation agreement, Cooper Co.’s profits would have approximated $2,700,000. That fact, plus the fact that Cooper’s present argument is predicated not upon an affirmative determination by the accountants that the $3,000,000 did not constitute profits but upon the negative implication arising from the accountants’ failure to refer to the payment in their March 31, 1980 report except in the footnote stating its exclusion from taxation, strongly suggests that had Cooper made the argument below Norris would have been able to controvert the negative implication Cooper now seeks to draw, or to establish that generally accepted accounting principles did not require any further reference to the distribution cancellation payment than was contained in the footnote. Having failed to make the present argument below, Cooper has waived his right to advance that argument before us in support of his application to vacate the award as beyond the arbitrator’s power to make.
For the foregoing reasons, in each case the order of the Appellate Division should be affirmed, with costs.

 See, e.g., the clause set forth in the footnote to the Norkin Plumbing case (45 NY2d, at p 364), which, though denominated a broad clause in the aspect (fraud in the inducement) there in issue, contained specifically enumerated exceptions. Instructive also is the differentiation between various contract provisions in Matter of County of Rockland (Primiano Constr. Co.) (51 NY2d 1). To the extent that Matter of Granite Worsted Mills (Aaronson Cowen, Ltd.) (25 NY2d 451) and Matter of Stange v ThompsonStarrett Co. (261 NY 37) hold contrary to the rule stated in this opinion, they are overruled.