In the Matter of EDWARD R. PECKERMAN, JR., et al., Respondents, v D & D ASSOCIATES, Appellant.

First Department, March 19, 1991

**APPEARANCES OF COUNSEL**

*John C. Nelson* of counsel *(George Brandon* and *Brent K. Olsson* with him on the brief; *Milbank, Tweed, Hadley & McCloy,* attorneys), for appellant.

*Edward P. Costikyan* of counsel *(Steven E. Landers* and *John P. Coffey* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for respondents.

**OPINION OF THE COURT**

MILONAS, J. P.

The parties to this proceeding are the successors in interest to a 1961 agreement concerning property at 979 Third Avenue

in Manhattan. The landlord, petitioners' predecessor, leased both the land and the building to be established on the site to the tenant, respondent's predecessor, with the specific requirement that the structure be constructed by a date certain in order to preserve the less restrictive provisions of a previous zoning code. Thereafter, the original section of the Decoration and Design Building, which was approximately 320,000 square feet in size, was erected, apparently becoming highly successful as a center for the interior decoration and design industry in New York. In 1965, a subsidiary of respondent, seeking to enlarge the building, executed a contract to purchase an adjacent plot of land conditioned on the procurement of a zoning variance that would permit the construction of a structure larger than permitted under existing regulations. This variance was granted on September 21, 1965 by the Board of Standards and Appeals and applied to both the original and newly purchased lots. The purchase contract was then assigned to petitioners, who agreed to buy the land and lease it to respondent. Thus, the original lease was modified on February 1, 1966 to include the newly acquired property and mandated that an expanded Decoration and Design Building be erected pursuant to the plans approved by the Board of Standards and Appeals.

Under the amended lease, the rent was increased by $72,000 to a total of $198,000 per year, with the added amount constituting 6% of the $1,200,000 purchase price for the new parcel. The parties, in calculating the rent for 1966, evidently recognized that the zoning variance was an important factor in ascertaining the value of the land. This $198,000 annual rent was in effect until August 31, 1988. For the period September 1, 1988 through December 31, 1998, the lease states that the rental be the larger of $198,000 annually or 6% of the "appraised value of the land demised hereunder as of September 1, 1988, considered as unimproved, unencumbered by this or any other lease and exclusive of any buildings or improvements thereon." Since the parties were unable to agree on the "appraised value of the land", petitioners commenced the underlying arbitration proceeding on August 12, 1988. The lease mandates that arbitration be completed within 30 days of appointment of the arbitrators, who are to "proceed with all reasonable dispatch to determine the question submitted". In that connection an arbitration panel was ultimately selected, each party naming one person and a third being chosen from lists of candidates prepared by each of

them, consisting of Brian Corcoran, chief of the national appraisal division of Cushman & Wakefield; Richard Ravitch, former head of HRH Construction, former chairman of the Bowery Savings Bank and an attorney with extensive experience in government; and Brian Strum, an attorney and chairman of the Prudential Property Company. Strum, the individual who had been jointly designated by the parties, accepted an invitation to serve as chairman of the group.

Hearings were conducted on January 31 and February 2, 1989, prior to which each side submitted expert appraisals and legal memoranda. Indeed, there was little difference between the respective experts as to the value per square foot of the structure that could be constructed on the site, and the parties, therefore, stipulated that if the maximum size of the building was found by the arbitrators to be 500,000 square feet or less, the correct figure would be $170 per square foot but if a larger building was involved, the value would be fixed at $160 per square foot. Consequently, the crucial question for the arbitrators became the size of the structure that could be erected on the site, assuming it to be unimproved and exclusive of any building or improvements thereon. It was respondent's contention that the appropriate valuation should consider only those improvements that could be constructed as of right under present zoning regulations, thereby allowing a building of only 197,820 square feet, less than half of the 511,000 square feet contained in the present structure. Petitioners, however, urged that the highest and best use of the property was a building such as the Decoration and Design Building, which is a legal and conforming use in accordance with the variance accorded the land in 1965. In support of their argument, they presented expert and documentary evidence regarding the history of the subject lease, the intent and past practice of the parties and the fact that the economic imperatives necessitated that the highest and best use of the land was a structure identical to the Decoration and Design Building. Petitioners also introduced an excerpt from a publication entitled The Appraisal of Real Estate (American Institute of Real Estate Appraisers [9th ed 1987]), commonly known as the "Appraiser's Handbook", which asserted, in pertinent part (at 275) that: "If there are no private restrictions, the property uses allowed by the zoning typically constitute the available choices in most highest and best use determinations. However, the possibility of a change in zoning should also be considered by the appraiser. If the highest and

best use of the site or property is not allowed under current zoning, but there is a reasonable probability that a change in zoning could be obtained due to shifting economic and social patterns, these conditions can be considered in determining highest and best use."

Two weeks after the hearing was completed, the parties submitted additional memoranda. An attempt to arrange for further mutually convenient hearing dates was unsuccessful. Respondent opposed petitioners' proposal that, as an alternative, the parties provide written evidence, and if, in the opinion of the arbitrators, more testimony were warranted, depositions, possibly recorded by videotape, could be held. Finally, on June 26, 1989, the chairman of the panel advised that "[r]ecent correspondence from you has made it evident * * * that no hearing can be practically scheduled for some months". He informed the parties that the arbitrators were "in full agreement" that they would accept written submissions on July 20th instead of a hearing. Respondent neither registered any objection to the panel's decision nor at any time requested a reopened hearing, and, on July 20th, it proffered 7 affidavits and 2 letters on the subject of whether the Decoration and Design Building could be reconstructed if it were destroyed, whether a new variance could be obtained and whether an "as-of-right" bonus was feasible if the site was limited to the present zoning code (respondent did not believe that any of these options were possible). Petitioners, of course, furnished an affidavit and four letters to the effect that a variance would be granted.

On August 23, 1989, the arbitrators issued a unanimous award. In a detailed written opinion, the panel, while rejecting petitioners' argument that because of the 1965 variance, the highest and best use of the site is a structure identical to the Decoration and Design Building, nonetheless found that the likelihood of procuring a new variance is a factor in determining the land's value. The arbitrators observed that "[a]ppraisers confirm that, where there are many instances of variances granted in an area, such a possibility must be taken into account when valuing land in that area. The arbitrators also take note that builders in the City of New York have been able to negotiate with the City to maintain structures built higher or even twelve stories larger than what was permitted by law or previous agreement with the City." Therefore, the panel ruled that:

"We believe that, as a minimum, it is reasonable to con-

clude that an application for a new variance on this unimproved lot would result in a permitted size of 375,000 square feet, or about 65% of the existing bulk. The governing authority would take into consideration the land's past use, its fit in the neighborhood, its economic effect on the neighborhood, the fact that the building would not be out of scale or represent significant change from the past, and the existing record of many variances being granted in this area geared to promote commercial uses.

"Therefore, after thoroughly reviewing all submissions of the parties, the transcript of the hearings, and the most recent submissions of expert opinions by the parties on what could be expected to be approved by the applicable authority on application by an owner of this land as unimproved for a variance from the present zoning law in order to maximize the size of building allowed to be constructed upon this land, the arbiters find that a building of a size of 375,000 square feet would be allowed. Applying the stipulated formula of $170 per square foot of building in order to determine the value of the land, we find that the value of the land is $63,750,000 which, when utilized in the formula provided in the lease to determine the amount of ground rent per year, results in an annual rental of $3,825,000."

█ The panel criticized respondent tenant's evident deliberate procrastination, as indicated by its role in causing a delay in the appointment of an arbiter for a few weeks and its nonpayment of even the minimum rent. However, the arbitration award itself clearly did not fully reflect the position of either of the parties but, in effect, was a compromise between them. Yet, respondent has appealed the Supreme Court's order granting petitioners' motion to confirm and denying the cross motion to vacate the award. There is, however, no substance to respondent's claims that the panel exceeded its authority by improperly writing a new contract and that the arbitrators committed misconduct by declining to conduct a further hearing, thereby precluding the tenant from cross-examining the opposing witnesses.

CPLR 7511 (b) (1) sets forth only four grounds for vacating an arbitration award: "(i) corruption, fraud or misconduct in procuring the award; or (ii) partiality of an arbitrator appointed as a neutral; except where the award was by confession; or (iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted

was not made; or (iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection." As the Court of Appeals has stated, "[i]n furtherance of the laudable purposes served by permitting consenting parties to submit controversies to arbitration, the law has adopted a policy of noninterference, with few exceptions, in this mode of dispute resolution" *(Matter of Sprinzen,* 46 NY2d 623, 629). Indeed, "[t]he ultimate disposition of the merits is of course reserved for the arbitrators and the courts are expressly prohibited from considering 'whether the claim with respect to which arbitration is sought is tenable, or otherwise pass[ing] upon the merits of the dispute' " *(Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co.,* 37 NY2d 91, 95). Moreover, in the absence of provisions to the contrary in the arbitration agreement, arbitrators are not constrained by principles of substantive laws or rules of evidence *(Matter of Silverman [Benmor Coats],* 61 NY2d 299; *Lentine v Fundaro,* 29 NY2d 382). In *Matter of Silverman (supra,* at 308) the Court of Appeals explained, in referring to the power of the arbitrator, that: "He may do justice as he sees it, applying his own sense of law and equity to the facts as he finds them to be and making an award reflecting the spirit rather than the letter of the agreement, even though the award exceeds the remedy requested by the parties * * *. His award will not be vacated even though the court concludes that his interpretation of the agreement misconstrues or disregards its plain meaning or misapplies substantive rules of law, unless it is violative of a strong public policy, or is totally irrational, or exceeds a specifically enumerated limitation on his power".

This standard was reaffirmed in *Matter of Albany County Sheriff's Local 775 (County of Albany)* (63 NY2d 654; *see also, Central Sq. Teachers Assn. v Board of Educ.,* 52 NY2d 918; *Lentine v Fundaro, supra).* Additionally, the assertion that a particular issue is beyond the arbitrator's authority is generally waived where not raised by means of an application for a stay although the claim is then preserved despite the failure to obtain such a stay *(Matter of Silverman [Benmor Coats], supra).* However, "it is only when the sole matter sought to be submitted to arbitration is clearly beyond the arbitrator's power that a stay will be granted" *(Matter of Silverman [Benmor Coats], supra,* at 309).

■ ■ Applying the foregoing legal precepts, the Supreme Court properly granted the motion to confirm the arbitration

award. First, respondent never challenged in any way, either through an application for a stay or by registering an objection with the panel, the authority of the arbitrators to consider the likelihood that a new variance could be secured, and, accordingly, this contention has been waived. Even on the merits, there is simply no basis for respondent's complaint since so long as the controversy was properly submitted to be resolved through arbitration, and there is no allegation that the matter herein was not arbitrable, then the panel was warranted in interpreting the contractual clauses in any manner it deemed appropriate *(Rochester City School Dist. v Rochester Teachers Assn.,* 41 NY2d 578, 583), and "[t]he path of analysis, proof and persuasion by which the arbitrator reached this conclusion is beyond judicial scrutiny" *(Central Sq. Teachers Assn. v Board of Educ., supra,* at 919). As previously noted, an award will not be vacated even if the arbitrator may have misconstrued or disregarded the plain meaning of the contract *(Matter of Albany County Sheriff's Local 775 [County of Albany], supra; Matter of Silverman [Benmor Coats], supra).* The only limitation on the arbitrator's power is that his ruling not be contrary to a strong public policy or completely irrational.

■ ■ Certainly, the panel's determination that another zoning ordinance would likely be granted and that this fact enhanced the value of the land was not, under the circumstances herein, irrational. Equally without foundation is respondent's argument that the evidence was insufficient to support the arbitration. CPLR 7511 fails to mention inadequacy of the evidence as a ground for vacating the award, no doubt for the good reason that assessment of the evidence presented at an arbitration proceeding is the arbitrator's function rather than that of the court. Therefore, unless there is no proof whatever to justify the award so as to render it entirely irrational, which is clearly not the situation in the present matter, the arbitrator's finding is not subject to judicial oversight. Finally, respondent has not preserved any claim with respect to the alleged misconduct of the arbitrators. At no time did it ever protest the panel's decision to accept written submissions in place of further hearings. On the contrary, respondent merely filed its papers and continued with the arbitration. Thus, it has waived any purported defects (CPLR 7511 [b] [1] [iv]; *see also, Matter of Pierre [General Acc. Ins.],* 100 AD2d 705, *lv denied* 63 NY2d 601).

Consequently, the order and judgment (one paper) of the

Supreme Court, New York County (Charles E. Ramos, J.), entered on March 21, 1990, which, *inter alia,* granted petitioners' application to confirm the arbitration award, denied respondent's cross motion to vacate or modify the arbitration award and confirmed the subject arbitration award, should be affirmed, with costs and disbursements.

ASCH, ELLERIN and RUBIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on March 21, 1990, unanimously affirmed, with costs and disbursements.