*1004 OPINION OF THE COURT
Aaron D. Bernstein, J.
This CPLR article 75 petition seeks vacatur of the award of the Arbitration Board to the extent that it modifies the Transit Authority’s dismissal of its employee Samuel Douglas. The award was rendered by a Tripartite Arbitration Board (hereinafter Board) consisting of a Transit Authority representative, a Transit Workers Union representative and an impartial chairperson.
The employee was dismissed by the Transit Authority on August 27, 1992 for his sexual harassment of a female Transit Authority bus operator. After the completion of a three-step grievance process the charges and penalty of dismissal were sustained. Under the collective bargaining agreement the propriety of Douglas’ dismissal was presented to the Board.
The charges against Douglas which were the basis for the decision to dismiss Douglas were the following: "On 7/23/92, bus operator Douglas made sexual advances towards bus operator Johnson and without permission fondled her breasts. On 8/12/92, he held his arm around her without permission. [In] both incidents [he] subjected her to repeated propositions and verbal abuse of a sexual nature.”
The arbitrators found that Douglas had committed the acts described by the bus operator Johnson. However, the majority of them found that dismissal was not appropriate and modified the dismissal to a suspension without pay for the period he had not worked. This represents approximately four months’ loss of pay or one third of a year’s earnings.
The question before the court is whether an Arbitration Board’s modification of the penalty of discharge, based on a finding of sexual harassment, as set forth in the above charge, violates public policy against sexual harassment in the work place.
CPLR 7511 (b) (1) (iii) provides the statutory grounds for vacating an arbitration award. It states: "[that an] award shall be vacated * * * [if] an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made”.
Thus, it is well settled that judicial review of arbitration awards is extremely limited. (Paperworkers v Misco, Inc., 484 US 29, 36 [1987]; Matter of Silverman, 61 NY2d 299 [1984]; Matter of Lentine v Fundaro, 29 NY2d 382 [1972].)
*1005 In addition to the above statutory grounds, there has been carved a judicial ground of vacating the award where it contravenes public policy. (Garrity v Lyle Stuart, Inc., 40 NY2d 354 [1976].) These grounds are very strictly circumscribed. In Matter of Sprinzen (Nomberg) (46 NY2d 623, 630) the court said: "The courts, however, must exercise due restraint in this regard, for the preservation of the arbitration process and the policy of allowing parties to choose a nonjudicial forum, embedded in freedom to contract principles, must not be disturbed by courts, acting under the guise of public policy, wishing to decide the dispute on its merits, for arguably every controversy has at its core some issue requiring the application, or weighing, of policy considerations.”
Certainly, there exists no statutory grounds for vacating the award. In fact, the petitioner does not seriously urge any statutory grounds. The petitioner relies on the grounds that the reduction of the punishment of discharge violates the State’s public policy against sexual harassment in the work place.
The basis for the petitioner’s application are two recent decisions in the Federal Circuit Court of Appeals. In Newsday, Inc. v Long Is. Typo. Union (915 F2d 840 [2d Cir 1990]), the court held that an arbitrator’s award modifying a decision to discharge an employee for sexually harassing a female coworker, to a lesser penalty, was in violation of public policy against sexual harassment in the work place. In Exxon Shipping Co. v Exxon Seamen’s Union (993 F2d 357 [3d Cir 1993]) the court vacated the arbitrators’ award reinstating an Exxon employee who had been discharged after his oil tanker ran aground and he tested positive for marihuana. The arbitrator had directed the employer to reinstate the grievant to his former position without back pay.
Both of these cases relied on public policy exceptions. In Exxon (supra) the Third Circuit Court found that the effect of reinstatement would violate public policy requiring the employer, Exxon, to operate a drug-free and safe work place, embodied in the regulation of the United States Coast Guard pertaining to the safe operation of vessels. The regulations, which express Federal public policy, are clear. They provide that an individual who tests positive for drugs "shall be denied employment as a crew member or removed from duties which directly affect the safety of the vessel’s navigation.” Further, there was also a statutory requirement that the *1006 seaman be recertified as drug free before returning to work and this was not done.
In Newsday (supra), the court refers to the public policy-expressed by the Federal Equal Employment Opportunity Commission (EEOC) as grounds for vacating the award dismissing the employee for sexual harassment. This public policy requires an employer to affirmatively address the subject of sexual harassment, express strong disapproval, develop appropriate sanctions, inform employees of their right to raise the issue of harassment and to prevent the existence of a hostile and offensive work environment. There is no requirement mandating discharge as punishment in all sexual harassment cases. However, the public policy would be defeated if one concluded that the punishment meted out would not be a deterrent. Here, the arbitrator found "this is not a case where it is clear that grievant cannot or will not modify his behavior * * * There is no evidence of an earlier violation of the same nature and while grievant’s actions towards Ms. Johnson were offensive, he did not frighten her.”
In Newsday (supra), as distinguished from this case, the grievant was a chronic sexual harasser and therefore, his reinstatement would clearly have had a negative impact on the public policy expressed by the EEOC. Such is not the case here. The employee here has no record of prior sexual harassment. The punishment given by the arbitrators resulting in the loss of one quarter of his annual salary certainly is a substantial punishment for a first offense. There is no public policy violation where the arbitrators conclude that the punishment is appropriate to deter employees from committing acts of sexual harassment in the work place. The Exxon (supra) and Gulf Coast Indus. Workers Union v Exxon Co. (991 F2d 244 [5th Cir 1993]) cases can also be distinguished on the grounds that they involve drug violations rather than sexual harassment. The court in Exxon (at 367) points out the "magnitude of possible harm” that could occur from a person using drugs while operating a vessel. Obviously, that is unlikely to occur from this petitioner’s act. Mr. Douglas’ reinstatement would not place thousands at risk or be a risk to the environment.
On the other hand, there are numerous decisions which sustain an arbitrator’s award in reducing dismissal as a punishment for sexual misconduct. In Communication Workers v Southeastern Elec. Coop. (882 F2d 467 [10th Cir 1989]), the court upheld the arbitrator’s decision that an electric *1007 company lineman accused of sexual assault should be suspended for one month without pay rather than be discharged, noting that the employee’s conduct could be remedied by punishment less severe than discharge.
Additionally, in Chrysler Motors Corp. v International Union Allied Indus. Workers (959 F2d 685 [7th Cir 1992]) the court upheld the arbitrator’s award. The evidence did not support a finding that a grievant could not be rehabilitated and therefore severe discipline, not discharge, should be adequate punishment. It "would * * * demonstrate to all employees Chrysler’s opposition to sexual harassment”. (Supra, at 686.) The grievant’s penalty was reduced to a 30-day suspension and Chrysler was directed to reinstate the grievant with back pay.
Stroehmann Bakeries v Local 776 (969 F2d 1436 [3d Cir 1992]) is another case that the Transit Authority relied upon in support of their argument. In Stroehmann the court vacated an arbitrator’s award reinstating an employee charged with sexual harassment because the court found that the grievant was not given a full opportunity to refute the charge or explain his conduct. There was no factual finding on the merits of the allegation. The arbitrator was also found to be unacceptably predisposed towards the grievant.
The court distinguished their case from Chrysler (supra) and Communication Workers (supra). It stated that those two cases upholding the arbitrators’ awards were still consistent with their opinion. The court said: "Communication Workers does not stand for the proposition that objectively unwelcomed sexual advances can be ignored by an arbitrator. The Tenth Circuit merely deferred to the arbitrator’s choice of remedy. [See also, Chrysler.]” (Stroehmann Bakeries v Local 776, supra, at 1443.)
Therefore, Stroehmann (supra) accepts the proposition that the arbitrator can reduce the punishment of discharge and still follow Federal public policy.
The Court of Appeals of the State of New York reviewed the reduction of the punishment of discharge in arbitration. In Binghamton Civ. Serv. Forum v City of Binghamton (44 NY2d 23, 29-30 [1979]) the Court found that "a municipal officer accepting a gift under circumstances where the inference could be drawn that the gift was [a bribe] does not inflexibly mandate the discharge of an employee”. The arbitrator had reduced the penalty to a six-month suspension without pay. The Court said (at 30): "There being no statutory bar to *1008 imposition of a lesser sanction than outright discharge (cf. Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist, 38 NY2d 137, 144), there is nothing in the award which would render it irrational as a matter of law or violative of public policy. * * * The fact that we may disagree with the wisdom and advisability of the arbitration award, gives us no license, as a court of law, to impose what we may feel is a more appropriate remedy.”
In Muschany v United States (324 US 49 [1944]) the Court said (at 66): "Public Policy is to be ascertained by reference to the laws and legal precedents and not from general consideration of supposed public interests.”
It would appear that accepting a bribe, as in Binghamton (supra), would require immediate dismissal. Yet the Court did not hold that the reduction of that punishment violated the public policy of this State. Similarly, in the instant case this court holds there is nothing in the law or legal precedents that mandates that an individual found guilty of sexual harassment for the first time must be discharged.
Since there is no statute or legal precedent requiring discharge of an employee who is found to have committed acts of sexual harassment for the first time, there is no public policy against the arbitrators herein from reducing the punishment to this employee.
Furthermore, the collective bargaining agreement between the parties, which provides for the arbitration proceeding herein, gives the power to reduce the punishment to the Board, except in the case of assault.*
It is obvious that the parties to the collective bargaining agreement knew of the provision imposed on the arbitrators which prohibited reducing punishment for an employee who committed an assault. If the parties intended to similarly limit the power of the arbitrators in sexual harassment cases, they would have provided for such power in the agreement. Thus, the Transit Authority is bound to accept the arbitrator’s decision by the collective bargaining agreement. There is no such provision involved in Newsday, Inc. v Long Is. Typo. Union (supra).
In the words of the Supreme Court in Steelworkers v Enter *1009 prise Corp. (363 US 593, 597 [1964]): “When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. That is especially true when it comes to formulating remedies.”
The arbitrators found that Mr. Douglas was capable of rehabilitation. The suspension and loss of one third of a year’s earnings is a punishment which the arbitrators could conclude would deter further acts of sexual harassment and fulfill the Transit Authority’s statutory duty. Such punishment does not violate the public policy against sexual harassment in the work place. The punishment is severe enough to send a clear signal to all Transit Authority workers that sexual harassment will not be tolerated.
The New York Court of Appeals in Binghamton (supra) supports giving deference to the arbitrators’ choice of remedy. The award enforced public policy by the severity of the punishment, and justice was served by the appropriateness of the punishment. Thus, the arbitrators’ award should be sustained and the application to vacate is denied.

 In the original papers the petitioner claimed that this was an assault and therefore the Board could not reduce the punishment. On the argument of the motion the petitioner withdrew this claim and stated it relied solely on the public policy argument.