■ NOEL M. WIEDERHORN, MD, on Behalf of NOEL M. WIEDERHORN, MD IRA ROLLOVER ACCOUNT, Respondent, v J. EZRA MERKIN et al., Appellants. [944 NYS2d 53]—

Judgment, Supreme Court, New York County (Richard B. Lowe, III, J.), entered February 9, 2011, awarding petitioner $1,758,744.01 as against respondent J. Ezra Merkin, and bringing up for review an order, same court and Justice, entered August 17, 2010, which, inter alia, granted the petition to confirm an arbitral award, denied respondents' cross petition to vacate the award as against Merkin and to confirm it as to re-

spondent Gabriel Capital Corporation (Gabriel), and granted petitioner's motion to dismiss respondents' counterclaim, unanimously modified, on the law, to the extent of confirming the award as to Gabriel, and otherwise affirmed, without costs.

The following facts are undisputed: Petitioner invested in nonparty Ascot Partners, L.P. (Ascot), a fund operated by respondent J. Ezra Merkin, who allegedly failed to disclose that the fund's monies were funneled to Bernard Madoff to invest. On March 18, 2003, petitioner Noel M. Wiederhorn subscribed for a $500,000 limited partnership interest in Ascot, on behalf of his individual retirement account (IRA). In the subscription agreement, petitioner represented that he was a "qualified purchaser." In order to reach the required $5 million in investments, petitioner included his house and office as real estate held for investment purposes. In 2004, petitioner invested an additional $962,040 in Ascot on behalf of his IRA. Merkin, Ascot's general partner, forwarded the funds to nonparty Bernard Madoff. In 2008, petitioner learned that the funds he had invested were misappropriated during Madoff's perpetration of a "Ponzi" scheme.

Pursuant to the Ascot limited partnership agreement's arbitration clause, petitioner commenced an arbitration action against Merkin, Gabriel, and Ascot* on December 19, 2008. Gabriel provided "accounting and back-office" services to Ascot, and Merkin is Gabriel's sole shareholder. The arbitration clause requires that any dispute arising out of the agreement or breach of the agreement be submitted to arbitration in New York.

At arbitration, petitioner asserted claims for violation of the New Jersey Uniform Securities Law (NJ Stat Ann §§ 49:3-51, 49:3-71), breach of fiduciary duty, common-law fraud and deceit, and gross negligence. Following seven days of evidentiary hearings before a three-person panel, a two-to-one majority found in petitioner's favor on his claims for breach of fiduciary duty and violation of the New Jersey Securities Law as against Merkin, and ordered him to pay petitioner restitution in the amount of $1,462,040, plus interest. The arbitral panel dismissed all claims against Gabriel.

Petitioner brought a special proceeding to confirm the arbitral award. Merkin and Gabriel answered jointly, cross-petitioned to vacate the award against Merkin and confirm the award to the extent it dismissed all claims against Gabriel, and counterclaimed for indemnification.

Respondents contended that the arbitral panel found that

---

* Petitioner subsequently withdrew his claims against Ascot.

petitioner misrepresented his status as a qualified purchaser in the subscription agreement. They further argued that pursuant to the indemnification clause in the parties' subscription agreement, they are entitled to recover $1,010,542 in attorneys' fees and $583,092 for expert witnesses, consultants, arbitrators, and transcripts. The indemnification clause of the subscription agreement states in pertinent part: "The Investor [petitioner and/or his IRA] agrees to indemnify and hold harmless . . . [Ascot's] General Partner [respondent Merkin] . . . [and his] affiliate[ ] . . . against any and all loss, liability, claim, damage and expense whatsoever (including all expenses reasonably incurred in investigating, preparing or defending against any claim whatsoever) arising out of or based upon (i) any false representation or warranty made by the Investor . . . in this Subscription Agreement . . . or (ii) any action for securities law violations instituted by the Investor which is finally resolved by judgment against the Investor." Respondents also contended that uncontradicted evidence established that petitioner was aware that Madoff had been delegated investment responsibility for substantially all of Ascot Partners' assets prior to petitioner's first investment in Ascot.

The court issued a decision and order dated August 6, 2010, granting petitioner's motion to confirm the award, and denying respondents' cross petition and counterclaim. The court then issued a judgment for petitioner dated January 28, 2011 ordering recovery of $1,758,744 from J. Ezra Merkin. The judgment, however, did not reflect the dismissal of petitioner's claims against Gabriel.

On appeal, respondents Merkin and Gabriel argue that the court erred when it confirmed the award against Merkin but not in favor of Gabriel, and denied Gabriel's counterclaim for indemnification. Respondents argue, inter alia, that a confirmation of the award in favor of Gabriel constitutes a "judgment against the investor," entitling Gabriel to recover attorneys fees and other expenses under the terms of the indemnification clause.

For the reasons set forth below, we modify to confirm the entire award and amend the judgment accordingly, but affirm denial of respondents' counterclaim. Gabriel and Merkin, having charted their course in presenting and reaping the benefits of a joint defense, should not now be considered separately for the purposes of indemnification. Petitioner prevailed in the arbitration against the *joint representation of Merkin and Gabriel*. Thus, even though the judgment is modified in Gabriel's favor, neither respondent may recover the cost of their joint defense.

As a threshold matter, we note that an arbitration award will not be overturned unless it is violative of a strong public policy, is totally irrational, or exceeds a specifically enumerated limitation on the arbitral panel's power (*Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 308 [1984]). Respondents have not established any of these bases for reversal.

Notably, the arbitration panel did not find that petitioner had misrepresented his status in the subscription agreement. To the contrary, the panel found that petitioner was unaware that he was not a qualified investor. We are bound by these factual findings made by the panel (*Silverman*, 61 NY2d at 308; *Matter of Brown & Williamson Tobacco Corp. v Chesley*, 7 AD3d 368, 372 [2004]).

Respondents have similarly provided no basis for overturning the panel's determinations that New Jersey Securities Law applies in this case (*see e.g. Silverman*, 61 NY2d at 308; *Brown & Williamson*, 7 AD3d at 372). Moreover, as to any conflicting testimony about petitioner's awareness of Madoff's involvement with Ascot, a court may not second-guess a determination made by the arbitration panel based on inconsistent evidence (*see e.g. Brown & Williamson*, 7 AD3d at 373).

Respondents correctly assert, however, that they are entitled to confirmation of the entire award, including that part of the award dismissing the claims against Gabriel. CPLR 7510 states that "[t]he court shall confirm an award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified upon a ground specified in section 7511" (*see Matter of Bernstein Family Ltd. Partnership v Sovereign Partners, L.P.*, 66 AD3d 1, 7 [2009] [CPLR 7510 confers a broad right to confirmation of an arbitral award]). The record in this case indicates that respondents moved to confirm within one year of the award, and petitioner does not contend that any of the grounds specified in CPLR 7511 applies.

Nonetheless, confirmation of the award and modification of the judgment do not mandate granting Gabriel's counterclaim for indemnification. A dismissal of the claims against Gabriel and some of the claims against Merkin cannot be characterized as a "judgment against" petitioner. To trigger the second prong of the indemnification clause, Gabriel and Merkin would have to demonstrate that they "prevailed" in the action by obtaining a judgment in their favor (*see Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491 [1989] ["Under the general rule, attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule"]). The

courts have generally held that the "prevailing" or "successful" party is the party in whose favor a "net judgment" was entered (3 Stein, Personal Injury Damages Treatise § 17:56 [3d ed]; *see McGrath v Toys "R" Us, Inc.*, 3 NY3d 421, 431 [2004] [a plaintiff who obtains a damages judgment, which forces the defendant to pay a sum to the plaintiff that the defendant would not otherwise be required to pay, is considered the prevailing party]). The party who prevails with respect to "the central relief sought" is considered the prevailing party (*Matter of Metropolitan Transp. Auth. v HRH Constr. Interiors, Inc.*, 18 Misc 3d 1133[A], 2008 NY Slip Op 50303[U], *3 [Sup Ct, NY County 2008]; *see LGS Realty Partners LLC v Kyle*, 29 Misc 3d 44 [App Term, 1st Dept 2010]).

Here, although the arbitration panel found that Gabriel had no duty to petitioner and dismissed the claims against it, and dismissed some of the claims against Merkin, petitioner prevailed in the arbitration proceeding because he was awarded the full value of his investments in Ascot with interest, in "full satisfaction of all claims and counterclaims." The fact that petitioner did not prevail on all of his claims, including the ones against Gabriel, is irrelevant. It is not necessary for a party to prevail on all of his claims in order to be considered "prevailing" (*see Duane Reade v 405 Lexington, L.L.C.*, 19 AD3d 179 [2005] [partial success did not negate the fact that the landlord prevailed, thus entitling it to counsel fees]).

Gabriel's argument that it should be considered separately for the purpose of determining whether it prevailed against petitioner is without merit. Respondents mounted a joint defense, maintaining absolute identity in the arbitration, in their cross petition and counterclaims to Supreme Court, and on appeal to this Court.

The record reflects that respondents' submissions, including respondents' answer to statement of claim, prehearing memorandum, posthearing brief, and respondents' posthearing reply brief, present arguments throughout on behalf of "respondents" jointly. Even after the arbitration panel found that Merkin was liable and Gabriel was not, both "respondents" continued to represent their interests, claims, etc. jointly before Supreme Court and on appeal to this Court.

Furthermore, the record indicates that the cost of that defense accrued to both parties jointly, making it impossible to allocate expenses between Merkin and Gabriel. In their verified answer, cross petition and counterclaim, respondents assert that they are entitled to recoup $1,593,632 in fees for their attorneys, expert witnesses, consultants, arbitrators, and transcripts. The

exhibits to the verified answer indicate that the invoices were for representation of both Merkin and Gabriel jointly, and paid primarily by Gabriel. Thus, there is no way that a court could identify attorneys' fee expenses that accrued to representation of only Gabriel that were not already being spent on Merkin's defense.

Since respondents' motion to renew is still pending before the Supreme Court, we decline petitioner's request to decide whether newly discovered evidence constitutes grounds for vacating the arbitral award (*see Gribbin v Kearns*, 260 AD2d 601, 602 [1999]).

We have reviewed respondents' remaining arguments and find them unavailing. Concur—Mazzarelli, J.P., Catterson, Moskowitz, Renwick and Abdus-Salaam, JJ.