[771 NYS2d 505]

SIMON HABERMAN, Doing Business as ORWELL MANAGEMENT Co., Appellant, v DAVID S. SINGER et al., Respondents.

251 CPW HOUSING LLC, Appellant, v DAVID S. SINGER et al., Respondents.

First Department, February 5, 2004

APPEARANCES OF COUNSEL

*Gale Fieldman* for appellants.

*David S. Singer*, pro se, and *Michael R. Cohen* for David S. Singer, respondent.

*Kilhenny & Felix (James M. Felix* of counsel), for Shelley R. Singer, respondent.

## OPINION OF THE COURT

ELLERIN, J.

These actions arise from a landlord's intransigence over a one-year rent stabilized lease entered into more than 20 years ago on apartment 12E at 1 West 85th Street in Manhattan. The lease commenced September 1, 1982 at a monthly rent of $2,200. In June 1983, the Conciliation and Appeals Board (CAB) issued an opinion declaring the base rent to be $853.62 and directing the landlord to roll back the rent to that amount and to refund or credit against future rents over the next six months any rent the tenant had paid in excess of the base rent and any security deposit exceeding the lawful limits. The opinion provided that, if the landlord did not take action to comply within 30 days, the tenant could credit the excess rent against the succeeding months' rent until it was fully offset.

In October 1983, the CAB issued an opinion directing the landlord to offer the tenant a renewal lease for two years and, in 1984, it issued an opinion directing the landlord to refund the overpayments dating from September 1982 through June 1983, which totaled $13,463.80.

The landlord brought a CPLR article 78 proceeding challenging the CAB's determination of the legal regulated rent. However, even after his application was denied and the petition dismissed in May 1984, rather than comply with any of the above directives, he brought an eviction/holdover proceeding in Housing Court. (It was dismissed in August 1984.) Moreover, the landlord rejected the checks tendered by the tenant in December 1984 and January 1985, which, crediting the $13,463.80 never refunded by the landlord, was the first date that rent was due again following the reduction. He also ignored the tenant's January 8, 1985 and February 1, 1985 letters offering to pay the legal rent upon the landlord's instructions.

In August 1991, the landlord commenced an action in Supreme Court seeking rent "arrears" for the tenant's use and

occupancy of the apartment from July 1983 through August 1991 at the rate of $853.62 per month, for a total of $70,190.96, and, while that action was pending, he brought an eviction proceeding in Housing Court for nonpayment of rent. Upon the tenant's motion for summary judgment, this Housing Court proceeding too was dismissed, "without prejudice to a new lawsuit, begun at a time that [the landlord] can at least properly *claim* that he is in compliance with the Rent Stabilization Law and Code provisions regarding lease renewals and/or security deposits" (emphasis in original). The court found that the landlord's statement in his petition that he was in compliance with applicable laws was not accurate and that his offer, "*finally*," of a lease renewal, which was made in his attorney's affirmation in opposition to the tenant's motion, was not only " 'too little and too late' to *nunc pro tunc* correct th[at] improper *verified* allegation" but also did not address "the excessive, and improper, security deposit being retained by [the landlord]" (emphasis in original).

In any event, in December 1995, 12 years after the CAB had so directed him, the landlord offered the tenant a renewal lease, which the parties executed for a term of one year commencing March 1, 1996. The landlord also returned the tenant's excess security deposit, with interest (although he did not refund the rent overpayments). In 1996, he brought another eviction proceeding in Housing Court for nonpayment of rent from April 1995 through April 1996. The portion of the proceeding that sought rent arrears from April 1995 through February 1996 was dismissed because the landlord's petition was based on the lease that commenced March 1, 1996. The remainder of the proceeding was settled.

Although the tenant timely tendered the rent for March and April 1996, the landlord did not cash the checks until February 1997, when he deposited them along with other checks that he had received from the tenant and never cashed. In June 1998, the landlord brought another action in Supreme Court seeking rent arrears for the period from September 1991 through February 1996 at the rate of $853.62 per month, for a total of $46,095.48.

· Considering the 1991 and 1998 actions jointly, on July 7, 1999, Supreme Court (Louise Gruner Gans, J.) dismissed the landlord's 1991 claim, pursuant to a lease, for rent for the period from September 1983 through August 1991 because there was no lease in effect after August 1983, and dismissed his 1998

claim, pursuant to section 2523.5 (d) of the Rent Stabilization Code (9 NYCRR 2523.5 [d]), for rent for the period subsequent to the filing of the 1991 action because no obligation to pay rent arises from that provision. The court declined, however, to dismiss the landlord's claim for equitable relief. In June 2000, this Court affirmed the dismissal of that portion of the complaint that sought back rent for the period between 1983 and 1991 pursuant to the Rent Stabilization Law and affirmed that the landlord was not precluded from claiming back rent on a basis such as quantum meruit (273 AD2d 177 [2000]).

In August 2000, the landlord brought an action in equity seeking, on a theory of unjust enrichment, damages in the amount of the full value of tenant's use and occupancy of the apartment for the period September 1, 1983 through August 30, 1991, at the rate of $853.62 per month, for a total of $70,190.96. The tenant moved for summary judgment dismissing the complaints in both the 2000 action (seeking recovery for use and occupancy from 1983 to 1991) and the 1998 action (seeking recovery for rent from 1991 to 1996) on the ground that the landlord's conduct in this case "is so patently beyond the pale that no recovery is available as a matter of law." Balancing the equities, the court agreed that any equitable award to the landlord would be "a mockery of the legal process." The complaints were dismissed and the landlord appealed.

We now affirm. The landlord refused to accept the tenant's checks for the legal regulated rent or to respond to the tenant's request for instructions as to tendering payment, even after his appeal of the CAB's determination of the rent was denied. He refused to offer the tenant a renewal lease or to return the tenant's excess security deposit until 12 years after he was ordered to do so. Simple compliance with the law presumably would have resulted in his receipt of the legal regulated rent for the duration of the tenancy. Indeed, once the renewal lease was issued in March 1996, the tenants began paying their rent monthly. However, instead of simply complying with the law, the landlord commenced an eviction action in 1984, an action for arrears for use and occupancy in 1991, two more eviction actions in 1995 and 1996, and another action for arrears for use and occupancy in 1998. Moreover, even after the March 1, 1996 lease was executed and the tenant was paying rent on a monthly basis, instead of cashing the rent checks as he received them, the landlord deposited a year's worth of checks on one day and brought an action for possession claiming nonpayment of rent. (The action was dismissed.)

These facts establish that the landlord was manipulating the tenant with the tenant's ultimate inability to satisfy a judgment and consequent eviction in mind (*see City of New York v Betancourt*, 79 Misc 2d 146, 148 [1974] ["There may be instances in which a landlord would purposefully delay many months in instituting a proceeding for nonpayment hoping to terminate the tenancy by eviction where the tenant is unable to pay large arrears in rent"], *affd* 79 Misc 2d 907, 908 [1974] ["The equitable defense of laches . . . if established on the trial . . . , would be a bar to a final judgment of possession founded on the stale demand"]). The landlord's undeniable attempt to frustrate the purposes of the Rent Stabilization Law militates against the intervention of equity on his behalf.

Accordingly, the order of the Supreme Court, New York County (Louise Gruner Gans, J.), entered July 12, 2002, which, to the extent appealed from as limited by the brief, granted defendant David Singer's motion for summary judgment dismissing the complaints in both actions, should be affirmed, without costs.

BUCKLEY, P.J., ROSENBERGER, WILLIAMS and GONZALEZ, JJ., concur.

Order, Supreme Court, New York County, entered July 12, 2002, affirmed, without costs.