OPINION OF THE COURT
Per Curiam.
Order, dated April 3, 2006, affirmed, with $10 costs.
Tenant commenced this Housing Part (HP) proceeding to compel landlord to repair the roof of the subject building and water damage to his apartment caused by alleged roof and window defects. Landlord moved to stay or dismiss the proceeding, based upon an arbitration clause contained in a prior settlement agreement between the parties. Civil Court denied landlord’s motion, holding that enforcement of the arbitration clause as it pertained to an HP proceeding violated public policy. We affirm.
While arbitration is “favor[ed] and encourage[d] ... as a means of conserving the time and resources of the courts and the contracting parties” (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am., 37 NY2d 91, 95 [1975]), courts play the “gatekeeping” role of deciding certain “threshold” issues before compelling or staying arbitration (Merrill Lynch, Pierce, Fenner & Smith v Benjamin, 1 AD3d 39 [2003]). Among such threshold issues is “whether public policy precludes arbitration of the subject matter of a particular dispute” (id. at 43-44, citing Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO, 95 NY2d 273, 281 [2000]). We find that the very purpose of an HP proceeding is “so interlaced with strong public policy considerations” that any disputes subject to such a proceeding must be “placed beyond the reach of the arbitrators’ discretion” (Matter of Associated Teachers of Huntington v Board of Educ., Union Free School Dist. No. 3, Town of Huntington, 33 NY2d 229, 235 [1973]).
An HP proceeding transcends an individual landlord-tenant dispute, and is part of a broad statutory enforcement mechanism where both the Housing Part of the Civil Court (CCA 110 [a]) and the New York City Department of Housing Preservation and Development (HPD) (see NY City Charter § 1802 [1]; CCA 110 [c]) are charged with the responsibility of enforcing the broad public interest in maintaining housing standards *61 under the Multiple Dwelling Law and the Housing Maintenance Code (see Multiple Dwelling Law § 2; NY City Housing Maintenance Code [Administrative Code of City of NY] § 27-2115; see also CCA 110 [a]). HPD discharges its duty by, inter alia, investigating building conditions, issuing violations and levying civil penalties (see Administrative Code § 27-2115 [h]); Civil Court, for its part, can “recommend or employ any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards, if it believes they will be more effective to accomplish compliance or to protect and promote the public interest” (CCA 110 [c]). Although the tenant in an HP proceeding benefits directly by an order to correct violations, the public also benefits through the preservation of scarce housing stock. To be sure, HPD’s participation in the process assures that important building-wide problems, not merely issues relating to a single unit, will be examined and remedied.
If enforcement of housing standards is left in the hands of an arbitrator, who is not bound by substantive law and “may do justice as he sees it,, applying his own sense of law and equity to the facts as he finds them to be” (Matter of Silverman [Benmor Coats], 61 NY2d 299, 308 [1984]), critical decisions carrying potentially adverse consequences may result, and the guardians of the public interest, Civil Court and HPD, will have no say in the results reached. “[T]he parties will obtain a decision here on a matter of moment to the public at large, although [HPD] is not a party to the proceedings, and no party to the proceedings is authorized to defend the interests of the public” (Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, 627 [1968]).
This case involves more than a private dispute to determine which party should perform plastering and painting in tenant’s apartment. Although at the time of inspection “there was [szc] no leaks,” as pointed out by HPD in its brief, a violation was issued for “conditions that could be the result of water penetration from the roof or exterior walls.” While tenant agreed to be responsible for the repairs and maintenance of his apartment, landlord agreed to be responsible for repairs to the roof and building-wide systems and common areas. Moreover, notwithstanding tenant’s obligations of repair and maintenance, the lease agreement specifically provides that the landlord “shall at all times be required to comply with any applicable law or regulations which governs an owner’s obligation to repair and maintain a building.”
*62 Lastly, allowing this HP proceeding to go forward will not result in a summary disposition against landlord. The terms of the lease will govern once the source and cause of the alleged water damage is determined. If ultimately it is determined that the damage to tenant’s apartment did not result from defects in the roof or other building structure, then landlord will not be held responsible for the repair expenses.