Patbru Realty Co., LLC v Bryant (2024 NY Slip Op 50189(U))

[*1]

Patbru Realty Co., LLC v Bryant

2024 NY Slip Op 50189(U)

Decided on February 28, 2024

Civil Court Of The City Of New York, Bronx County

Ibrahim, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 28, 2024
Civil Court of the City of New York, Bronx County

Patbru Realty Co., LLC, Petitioner,

against
Wilson Bryant, Respondent.

Index No. 334764/2022

For Petitioner: Rosenblum & Bianco, LLP
100 Merrick Rd, Suite 306 East
Rockville Centre, New York 11570
Respondent Pro Se

Shorab Ibrahim, J.

Recitation, as required by C.P.L.R. § 2219(a), of the papers considered in review of this motion. 
Papers Numbered
Order to Show Cause with Affidavit [NYSCEF Doc. Nos. 16] 1
Affirmation in Opposition [NYSCEF Doc. No. 17] 2
Relevant History
On June 29, 2023, this non-payment proceeding settled with respondent agreeing to pay $25,070 by September 15, 2023. Notably, petitioner agreed to repair, "to the extent required by law," the following alleged conditions: (1) front door wedged; (2) exterminate for roaches and rats; (3) bedroom floor coming up; (4) fridge; (5) kitchen cabinets; (6) stove uneven. Access was arranged for July 12 and 13, from 9am to 5pm, so long as the petitioner's workers arrived by noon. Repairs were required to be completed within (30) days of access. (see June 2023 stipulation at NYSCEF Doc. 12).
That stipulation, drafted by petitioner's counsel, also requires "petitioner to comply w/requests for arrears programs." (id). The stipulation also requires petitioner "to provide lease." (id).[FN1]

On September 19, 2023, respondent filed an order to show cause. Respondent alleged in the affidavit in support that petitioner was not providing paperwork that HRA needed, that he had not been provided the promised lease, and that repairs had not been done (see NYSCEF Doc. 13).
On October 3, 2023, the parties entered a second stipulation. Payment of arrears was now due by November 30, 2023 and petitioner was required to address, "to the extent required by law," all the same repairs from the June 2023 stipulation. Access was arranged for October 16 and 17, 9am to 5pm, with petitioner's workers to arrive by noon. Repairs were again required to be completed within (30) days of access. (see NYSCEF Doc. 15).
Petitioner again stipulated that it would "comply w/requests for documents for respondent's HRA application," and that it would "provide lease" by October 10, 2023. (see id).
On January 2, 2024, respondent filed a new order to show cause [the instant motion]. The affidavit in support alleges petitioner did not do repairs and did not provide a lease. (see NYSCEF Doc. 16).
On January 17, 2024, petitioner stipulated to adjourn the case to February 16, 2024, specifically for "qualifying lease to be provided." (see NYSCEF Doc. 20). Petitioner also stipulated to interim access dates to address the same alleged conditions from the prior two (2) stipulations, "to extent required by law." (id). At the bottom of the stipulation, the court ordered that petitioner "appear with a client/someone with personal knowledge to explain delay" in providing the lease and in completing repairs, both of which had been promised more than six (6) months prior. (see id).
On February 16, 2024, petitioner did not appear with someone who could provide answers, or anyone for that matter. The court adjourned the case to February 20, 2024, with the court advising petitioner's counsel that it was giving petitioner an opportunity to oppose entry of an order to correct and entry of an order permanently staying execution of the warrant for petitioner's failure to provide a lease.
By this time, the court was aware that there were twenty-nine (29) open violations in respondent's apartment.
On February 20, 2024, petitioner's counsel appeared without a client, without a lease and without any further information.

 Discussion
This court may "employ any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards." It can do so "regardless of the relief originally sought" if the court "believes they will be more effective to accomplish compliance " (see NYC Civil Court Act § 110(C); D'Agostino v Forty-Three E. Equities Corp., 12 Misc 3d 486, 489 [Civ Ct, New York County 2006], aff'd 16 Misc 3d 59 [App Term, 1st Dept. 2007]). The court has the power to enforce housing standards. (see NYC Civil Court Act § 203(o)). In other words, the court may issue orders to correct in non-payment cases. (see Diego Beekman Mut. Hous. Assn. Hous. Dev. Fund Corp., 2024 NY Slip Op 50144(U), 2 [Civ Ct, Bronx County 2024]).
Here, respondent complained of conditions in the first stipulation [June 2023] and in every subsequent filing with the court. The October 2023 stipulation and January 17, 2024 stipulations each include repair allegations. Indeed, the conditions in the subject apartment are more than mere allegations. Currently, there are twenty-nine (29) open violations of record at [*2]apartment 5J at 1349 Stratford Avenue, Bronx, NY 10472 (the subject premises).[FN2]

The violations include class "C" violations for "mice infestation" issued on December 6, 2021, December 1, 2023, January 5, 2024, January 22, 2024, and January 29, 2024. In other words, petitioner has been aware for at least two years of the "mice infestation" in the subject apartment.[FN3]
 "Roach infestation" violations were issued on December 1, 2023, January 5, 2024 and January 29, 2024, corroborating respondent's allegation of roaches in the subject apartment.[FN4]
Violations for the front door were issued on July 21, 2023 and December 1, 2023, corroborating respondent's allegation that the apartment door was defective.[FN5]

"Pursuant to section 328(3) of the Multiple Dwelling Law, in any proceeding before this part, computer printed HPD violations and all other computerized data relevant to the enforcement of state and local housing standards are prima facie evidence of any matter stated therein, and the court must take judicial notice thereof as if same were certified as true." (DHPD v Living Waters Realty, Inc., 14 Misc 3d 484, 486-487 [Civ Ct, New York County 2006]).
These open violations are prima facie proof that the conditions continue to exist. (see NYC Admin Code § 27-2115 [f][7]; Herclues v Bethel Capital, LLC, 70 Misc 3d 1221(A), *3 [Civ Ct, Bronx County 2021], citing DHPD v De Bona, 101 AD2d 875, 875 [2nd Dept. 1984]).
The court notes that, to date, stipulations spanning over half a year have not compelled petitioner to correct the conditions in the subject premises, despite petitioner stipulating it would do so "to the extent required by law." Undoubtedly, the law requires petitioner to correct any alleged conditions that were actually violations or turned out to be violations. Notably, petitioner's counsel's affirmation in opposition to respondent's order to show cause completely fails to address repairs, or lack thereof. Regardless of the "so ordered" stipulations, (see City of New York v Quadrozzi, 171 AD3d 1009 [2nd Dept. 2019] (generally, "so ordered" stipulations are enforced), the time to correct all the above-described violations has expired. There is simply no reason to not issue an order to correct.[FN6]

Order to Correct & Notice of Violations
It is hereby ORDERED that petitioner shall correct the above-described open class B violations within (30) days and the above-described class C violations within (21) days of the access dates ordered herein. As to all other open violations, which can be viewed on the DHPD website [and a copy of the violations is attached hereto], petitioner shall correct them no later [*3]than the "correction by" date listed in each violation, or within (30) days of the access dates, whichever is later.
Respondent shall provide access on March 18, 19 and 20, from 9 AM to 5 PM, with workers to arrive no later than 11 AM. Additional dates to be arranged as necessary and upon at least (48) hours' notice to the respondent.
Upon default, either party can move for appropriate relief, including, but not limited to, civil penalties and contempt.
Permanent Stay of the Non-Payment Judgment and Warrant
The court starts with the obvious—petitioner agreed time and again to provide respondent with a lease in his name. It did so in exchange for valuable consideration; respondent agreed to pay rent arrears he had no obligation to pay. It did so knowing that DSS often requires a lease in an applicant's name before it will process an application for the payment of arrears. There has been no explanation why petitioner has not provided the lease. Putting aside the thorny issue of whether respondent can be held liable for post stipulation rent when petitioner willfully fails to provide a lease, respondent's statements that his DSS application has been frustrated by the lack of a lease is unrefuted. But, what can the court do?
"Except for proceedings for the enforcement of housing standards, and applications for certain provisional remedies, the New York City Civil Court may not grant injunctive relief." (Broome Realty Associates v Sek Wing Eng, 182 Misc 2d 917, 918 [App Term, 1st Dept. 1999] (internal citation omitted)). Thus, the court cannot order petitioner to provide the lease. (see Jamaica Seven, LLC v Villa, 2020 NY Slip Op 50630(U) [App Term, 2nd Dept. 2020]; see also Morningside Partners I, LP v Fofanah, 15 Misc 3d 1132(A), 2 [Civ Ct, New York County 2007] ("While the parties could certainly agree to perform these tasks, the Civil Court, with its limited equitable power, had no jurisdiction to order the parties to carry them out.")).
On the other hand, stipulations should be enforced. (see 116 Lenox Realty LLC v Smith, 61 Misc 3d 137(A) [App Term, 2d, 11th and 13th Jud. Dists. 2018] (so ordered stipulation requiring landlord to provide W-9 must be enforced)).
In 116 Lenox, the court settled on staying execution of the warrant (14) days after the landlord provided a W-9 and certain other information. (see id).
In Dino Realty Corp. v Khan, (46 Misc 3d 71, 73 [App Term, 2nd Dept. 2014]), the court went as far as vacating the warrant where there was unexplained refusal by the landlord to provide a W-9. (see also Monastery Manor v Donati, 28 Misc 3d 133[A], [App.Term, 9th & 10th Jud. Dists. 2010] (judgment and warrant vacated when landlord would not provide W-9 form and proof of a tax identification number)
In 2720 LLC v White, 35 Misc 3d 1236(A), 2 [Civ Ct, Bronx County 2012], the court went even further, holding that petitioner had waived its right to certain rent arrears because of its refusal to provide a W-9 after stipulations and a court order providing for same.
Here, a simple stay of execution of the warrant for (14) days is not a sufficient penalty and cannot make up for the time lost.
Vacating the judgment and warrant is appropriate under the circumstances. (see Haberman v Singer, 3 AD3d 188, 192 [1st Dept. 2004] (landlord's attempts to frustrate purposes of the Rent Stabilization Code militate against intervention of equity on his behalf)). However, petitioner may move, by notice of motion, to reinstate the judgment and warrant upon a showing it has complied with its obligations under the stipulation. (see Dino Realty Corp. v Kahn, 46 Misc 3d at 73 ["Court should fashion relief by conditionally vacating the warrant so as to give the landlord a further opportunity to provide the necessary form."]). If the petitioner does so, the [*4]court must consider what the delay has cost respondent. It is possible that the arrears might have already been paid but for petitioner's refusal to provide a lease. Even if the lease were immediately provided, respondent has lost months of waiting in the DSS line.[FN7]
(see e.g. HPS Holdings Co., LLC v Al Associates, LLC, 10 Misc 3d 135(A), 1 [App Term, 2nd & 11th Jud. Dists. 2005] ("any default under the stipulation was not chargeable to tenants since landlord's agent frustrated their attempts to make timely payment.")).
This order is without prejudice to respondent's defenses and/or counterclaims to any claims for post-stipulation rent and/or use and occupancy.
Conclusion
Based on the foregoing, the court enters an order to correct with notice of violations as stated herein. The final judgment and warrant of eviction are vacated for the reasons stated. This constitutes the decision and order of the court. It will be posted on NYSCEF and a copy mailed to the pro-se respondents.
Dated: February 28, 2024
Bronx, New York
HON. SHORAB IBRAHIM
Judge, Housing Part

Footnotes

Footnote 1: Although this provision could be written more clearly, in context, it is obvious that petitioner was to give respondent a lease in his own name. Respondent was named as an occupant in this case. The parties negotiated payment of rent the respondent might not otherwise have to pay [as he was not a tenant under a lease] in exchange for becoming the successor tenant without further litigation.

Footnote 2: See 
https://hpdonline.nyc.gov/hpdonline/building/111995/violations. Last accessed February 21, 2024.

Footnote 3: Violation numbers 14715132, 16486011, 16565550, 16607824 and 16627153: hmc adm code: § 27-2017.4 abate the infestation consisting of mice in the entire apartment located at apt 5j, 5th story, 1st apartment from south at west, 2nd section from west at north.

Footnote 4: Violation numbers 16486010, 16565549 and 16627154: hmc adm code: § 27-2017.4 abate the infestation consisting of roaches in the entire apartment located at apt 5j, 5th story, 1st apartment from south at west.

Footnote 5: Violation number 16114309: § 27-2005 hmc: refit door in the entrance located at apt 5j, 5th story, 1st apartment from west at north; 16486012: § 27-2005, 27-2007, 27-2041.1 hmc, §238, § 309; § 107 (2) ( c) mdl and 28 rcny §25-171: replace or repair the self-closing doors that is missing or defective hinge, (door frame) in the entrance located at apt 5j, 5th story, 1st apartment from south at west.

Footnote 6: Respondent was sworn in and testified that the repairs had not been addressed as of the February 20, 2024 court date. This statement is unrefuted.

Footnote 7: While one DSS information sheet available online represents that a decision on a one-shot deal will be made 30-45 from when all documents are submitted, it usually takes much, much longer than that based on this court's experience over the last few years. (see 
https://www.nyc.gov/assets/hra/downloads/pdf/benefits/Emergency-Rental-Assistance-Grant-Flyer.pdf). Last accessed February 22, 2024.